SHOOK, HARDY & BACON L.L.P.
Rachel A. Straus (SBN 268836)
rstraus@shb.com
Megan Moran (SBN 356357)
mmoran@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Tel: 424.285.8330
Fax: 424.204.9093

Elisabeth A. Hutchinson (*pro hac vice*)
ehutchinson@shb.com
16600 17th Street, Suite 450
Denver, CO 80202
Tel: 303.285.5337

Attorneys for Defendant
Peet's Coffee, Inc.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

SAL MUNOZ, an individual, on behalf of himself, the general public, and those similarly situated,

Plaintiff,

v.

PEET'S COFFEE, INC.

Defendant.

Case No. 3:26-cv-00499-EMC

**DEFENDANT PEET'S COFFEE, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

[*Filed concurrently with Declaration of Rachel A. Straus; Request for Judicial Notice; [Proposed] Order*]

Hearing Date: July 16, 2026
Hearing Time: 1:30 pm
Judge: Hon. Edward M. Chen
Courtroom: 5

Complaint Filed: January 16, 2026

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: PLEASE TAKE NOTICE** that on July 16, 2026, at 1:30 pm, or as soon thereafter as this matter can be heard, in the Courtroom of the Honorable Edward M. Chen (Courtroom 5) of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendant Peet's Coffee, Inc. will, and hereby does, move to dismiss Plaintiff Sal Munoz's Class Action Complaint under Federal Rules of Civil Procedure 12(b)(1) for lack of standing, 9(b) for failure to plead with particularity, and 12(b)(6) for failure to state claims upon which relief can be granted. Peet's alternatively seeks to dismiss the nationwide class allegations.

This Motion is based on this Notice of Motion, the accompanying Memorandum of Points and Authorities, the Request for Judicial Notice, the Declaration of Rachel A. Straus, and all pleadings, papers, and documents on file herein, and any other written or oral submissions that may be presented at or before the hearing on this Motion.

Dated: May 4, 2026

SHOOK, HARDY & BACON L.L.P.

By: /s/ *Rachel A. Straus*
Rachel A. Straus
Elisabeth A. Hutchinson
Megan Moran

Attorneys for Defendant
Peet's Coffee, Inc.

# TABLE OF CONTENTS

Page

STATEMENT OF THE ISSUES TO BE DECIDED .......... X

MEMORANDUM OF POINTS AND AUTHORITY .......... 1

I. INTRODUCTION .......... 1

II. PLAINTIFF'S ALLEGATIONS .......... 2

A. Peet's Website .......... 2

B. Plaintiff's Allegations About His Use of the Website .......... 4

III. LEGAL STANDARD .......... 5

IV. ARGUMENT .......... 6

A. Plaintiff Fails to Allege a Concrete Injury Sufficient to Confer Article III Standing Because No Sensitive Data Is at Issue. .......... 6

1. Plaintiff does not allege a legally protected privacy interest in his browsing activities on the Peet's website. .......... 6

2. Plaintiff does not otherwise allege concrete harm under Article III. .......... 10

B. Plaintiff Fails to Satisfy Rule 9(b)'s Heightened Pleading Standard. .......... 11

C. Plaintiff Also Fails to State His Claims .......... 13

1. Plaintiff cannot state claims for invasion of privacy or intrusion upon seclusion. .......... 13

2. Plaintiff's section 631(a) claim fails to allege interception in transit or aiding and abetting. .......... 14

3. Plaintiff fails to allege an unlawful pen register under CIPA section 638.51 or lack of consent. .......... 17

4. Plaintiff fails to state a claim for common law fraud, deceit, and/or misrepresentation. .......... 20

5. Plaintiff fails to state a claim for unjust enrichment. .......... 22

D. Plaintiff Cannot Assert California Claims on Behalf of All Nationwide Visitors to the Peet's Website. .......... 23

V. CONCLUSION .......... 24

# TABLE OF AUTHORITIES


**Page(s)**

**Cases**

*Alexander Sisti v. Bosley Inc. & Bosley Med. Grp.*, No. 2:25-cv-10669-JFW-DFM, ECF No. 70, Op. (C.D. Cal. Apr. 27, 2026) ....................8, 10

*Andrade v. Am. First Finance, Inc.*, No. 18-cv-06743-SK, 2022 WL 3369410 (N.D. Cal. Aug. 16, 2022)........................... *passim*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009).........................................................................................5

*Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753 (9th Cir. 2015) ...................................................................................22

*Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196 (Cal. Super. Ct. Jan. 28, 2025)................................19

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) ...........................................................23

*Balabbo v. Wildflower Brands, LLC*, No. 25STCV20971, 2026 WL 1122773 (Cal. Super. Ct. Apr. 6, 2026)...............................18

*Begay v. Kerr-McGee Corp.*, 682 F.2d 1311 (9th Cir. 1982) .................................................................................19

*Belluomini v. Citigroup, Inc.*, No. CV-13-01743 CRB, 2013 WL 3855589 (N.D. Cal. July 24, 2013)...............................13

*Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App'x 351 (9th Cir. 2015) ..............................................................................9

*Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497, 2009 WL 1664468 (D. Minn. June 11, 2009)...........................................17, 18

*Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370 (Cal. Super. Ct. Sept. 9, 2024)...............................19

*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) ...........................................................................16

*Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023).........................................................................................4

*Dawidzik v. Tesla, Inc.*, No. EDCV 25-01982-KK-SPX, 2025 WL 3786963 (C.D. Cal. Dec. 29, 2025) ....................14

*de Ayora v. Inspire Brands, Inc.*,
No. 25-CV-03645-AGT, 2025 WL 3707561 (N.D. Cal. Dec. 22, 2025) .......................... 11, 16

*Doe I v. Google LLC*,
741 F. Supp. 3d 828 (N.D. Cal. 2024) .......................... 22

*Doe v. Eating Recovery Ctr. LLC*,
806 F. Supp. 3d 1109 (N.D. Cal. 2025) .......................... 15, 19

*Drummer v. Costar Grp., Inc.*,
No. EDCV 25-1047 JGB, 2025 WL 3190656 (C.D. Cal. Oct. 22, 2025) .......................... 9

*Drummer v. CoStar Grp.*,
No. EDCV 25-1047 JGB, 2026 WL 712922 (C.D. Cal. Feb. 13, 2026) .......................... 9

*Esparza v. UAG Escondido A1 Inc.*,
No. 23CV0102 DMS (KSC), 2024 WL 559241 (S.D. Cal. Feb. 12, 2024) .......................... 17

*In re Facebook, Inc., Consumer Priv. User Profile Litig.*,
402 F. Supp. 3d 767 (N.D. Cal. 2019) .......................... 10

*In re Facebook, Inc. Internet Tracking Litigation*,
956 F.3d 589 (9th Cir. 2020) .......................... 7, 9

*Folgelstrom v. Lamps Plus, Inc.*,
195 Cal. App. 4th 986 (2011) .......................... 14

*Gabrielli v. Haleon US Inc.*,
815 F. Supp. 3d 852 (N.D. Cal. 2025) .......................... 8

*Garcia v. Blackhawk Network, Inc.*,
No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026) .......................... 7, 8, 9, 13

*In re Google Assistant Priv. Litig.*,
457 F. Supp. 3d 797 (N.D. Cal. 2020) .......................... 22

*In re Google, Inc. Privacy Policy Litig.*,
58 F. Supp. 3d 968 (N.D. Cal. 2014) .......................... 13

*Graham v. Noom, Inc.*,
533 F. Supp. 3d 823 (N.D. Cal. 2021) .......................... 15

*Greenstein v. Noblr Reciprocal Exch.*,
585 F. Supp. 3d 1220 (N.D. Cal. 2022) .......................... 10

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) .......................... 13, 14

*Heeger v. Facebook, Inc.*,
509 F. Supp. 3d 1182 (N.D. Cal. 2020) .......................... 9, 20

*Heiting v. Wildflower Brands, LLC*,
No. 25 STCV18507 (Cal. Super. Ct. Apr. 16, 2026) .......... 19

*Hernandez v. Hillsides, Inc.*,
47 Cal. 4th 272 (2009) .......... 14

*Hubbard v. Google LLC*,
No. 19-CV-07016-SVK, 2024 WL 3302066 (N.D. Cal. July 1, 2024) .......... 21, 23

*Hughes v. Apple, Inc.*,
No. 22-CV-07668-VC, 2024 WL 4828072 (N.D. Cal. Nov. 18, 2024) .......... 23

*In re Innovatio IP Ventures, LLC Patent Litig.*,
886 F. Supp. 2d 888 (N.D. Ill. 2012) .......... 18

*In re iPhone Application Litig.*,
844 F. Supp. 2d 1040 (N.D. Cal. 2012) .......... 14

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) .......... 11, 12, 20

*Keskinen v. Lush Handmade Cosmetics LLC*,
770 F. Supp. 3d 1234 (C.D. Cal. 2025) .......... 9

*Khamooshi v. Politico LLC*,
786 F. Supp. 3d 1174 (N.D. Cal. 2025) .......... 8, 9, 20, 22

*Klein v. Facebook, Inc.*,
580 F. Supp. 3d 743 (N.D. Cal. 2022) .......... 22

*Konop v. Hawaiian Airlines, Inc.*,
302 F.3d 868 (9th Cir. 2002) .......... 15

*Licea v. Hickory Farms LLC*,
No. 23STCV26148, 2024 WL 1698147 (Cal. Super. Ct. Mar. 13, 2024) .......... 19

*Low v. LinkedIn Corp.*,
900 F. Supp. 2d 1010 (N.D. Cal. 2012) .......... 14

*Maghoney v. Dotdash Meredith, Inc.*,
No. 24-cv-2394-AJB-BJW, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 10, 11

*Malibu Media, LLC v. Pontello*,
No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .......... 20

*Mazza v. Am. Honda Motor Co.*,
666 F.3d 581 (9th Cir. 2012) .......... 23, 24

*McGowan v. Weinstein*,
505 F. Supp. 3d 1000 (C.D. Cal. 2020) .......... 20

*Mikulsky v. Noom, Inc.*,
682 F. Supp. 3d 855 (S.D. Cal. 2023) ........ 6, 9

*Mirmalek v. L.A. Times Commc'n. LLC*,
No. 24-CV-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024) ........ 9, 19

*Natalie Brahm, et al., v. Hospital Sisters Health System, et al.*,
No. 23-cv-444-wmc, ECF No. 175, Order (W.D. Wis. May 1, 2026) ........ 8

*Ovation Toys Co. v. Only Hearts Club*,
675 F. App'x 721 (9th Cir. 2017) ........ 12

*Pena v. GameStop, Inc.*,
670 F. Supp. 3d 1112 (S.D. Cal. 2023) ........ 18

*People v. Johnson*,
150 Cal. App. 4th 1467 (2007) ........ 19

*Popa v. Microsoft Corp.*,
153 F.4th 784 (9th Cir. 2025) ........ 6, 8, 9

*Quigley v. Yelp, Inc.*,
No. 17-CV-03771-RS, 2018 WL 7204066 (N.D. Cal. Jan. 22, 2018) ........ 16

*R.C. v. Sussex Publishers, LLC*,
No. 24-CV-02609-JSC, 2025 WL 948060 (N.D. Cal. Mar. 28, 2025) ........ 15

*Reuters News & Media, Inc. v. Superior Court*
(6th Dist.) ........ 19

*Rodriguez v. Ink Am. Int'l Grp. LLC*,
No. 25STCV15350, 2025 WL 4034985 (Cal. Super. Ct. Dec. 10, 2025) ........ 18

*Rodriguez v. Plivo Inc.*,
No. 24STCV08972, 2024 WL 5184413 (Cal. Super. Ct. Oct. 2, 2024) ........ 17

*Sanchez v. Cars.com Inc.*,
No. 24STCV13201, 2025 WL 487194 (Cal. Super. Ct. Jan. 27, 2025) ........ 19

*Seismic Reservoir 2020, Inc. v. Paulsson*,
785 F.3d 330 (9th Cir. 2015) ........ 6

*Shah v. Cap. One Fin. Corp.*,
768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 21

*Shah v. Fandom, Inc.*,
754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 9, 19

*Shah v. MyFitnessPal, Inc.*,
No. 25-CV-04430-PCP, 2026 WL 216334 (N.D. Cal. Jan. 27, 2026) ........ 12

*Silver v. Stripe Inc.*,
No. 4:20-CV-08196-YGR, 2021 WL 3191752 (N.D. Cal. Jul. 28, 2021)....19

*Smith v. YETI Coolers, LLC*,
754 F. Supp. 3d 933 (N.D. Cal. 2024)....16, 17

*Torres v. Nutrisystem, Inc.*,
289 F.R.D. 587 (C.D. Cal. 2013)....20

*Torres v. Prudential Fin., Inc.*,
No. 22-CV-07465 (CRB), 2025 WL 1135088 (N.D. Cal. Apr. 17, 2025)....16

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....5, 6, 8, 9

*United States v. Forrester*,
512 F.3d 500 (9th Cir. 2008)....20

*In re USA Today Co., Inc. Internet Tracking Litig.*,
No. 24-cv-05150-MMC, 2026 WL 932655 (N.D. Cal. Apr. 6, 2026)....6, 9, 20

*Variety Media, LLC v. Superior Court*
(2d Dist.)....19

*Walsh v. Dollar Tree Stores, Inc.*,
No. 25-cv-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025)....19, 21

*Wiley v. Universal Music Grp., Inc.*,
No. 25-CV-03095-PCP, 2025 WL 3654085 (N.D. Cal. Dec. 17, 2025)....12

*Williams v. Facebook, Inc.*,
498 F. Supp. 3d 1189 (N.D. Cal. 2019)....12

*Wishnick v. Frye*,
111 Cal. App. 2d 926 (1952)....21

*In re Yahoo Mail Litig.*,
308 F.R.D. 577 (N.D. Cal. 2015)....24

*In re Yahoo Mail Litig.*,
7 F. Supp. 3d 1016 (N.D. Cal. 2014)....13

*In re Zynga Priv. Litig.*,
750 F.3d 1098 (9th Cir. 2014)....15

**Statutes**

18 U.S.C. § 3121....17

Cal. Penal Code §§ 630 *et seq.*....*passim*

Cal. Penal Code § 631 .......... 2, 7, 15, 16
Cal. Penal Code § 631(a) .......... 14
Cal. Penal Code § 638.50(b) .......... 20
Cal. Penal Code § 638.51 .......... *passim*
Cal. Penal Code § 638.52(c) .......... 18
Cal. Penal Code § 638.52(d)(3) .......... 18

**Other Authorities**

Fed. R. Civ. P. 9(b) .......... 1, 11, 12, 20
Fed. R. Civ. P. 12(b)(1) .......... 1, 5
Fed. R. Civ. P. 12(b)(6) .......... 2, 5
Peet's Coffee's website, www.peets.com .......... 1, 2
U.S. Const. art. III .......... *passim*

## STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether Plaintiff alleges an injury-in-fact sufficient to establish Article III standing, when he fails to identify any personal or highly sensitive information at issue and otherwise fails to plead concrete harm.

2. Whether Plaintiff satisfies the heightened pleading requirements of Rule 9(b), when he fails to plead specific allegations regarding the "what" and "when" of his interactions with the website.

3. Whether Plaintiff states viable claims for invasion of privacy and intrusion upon seclusion, when he does not specify what data from him was actually captured but, at most, the alleged disclosure of basic browsing activity on a public coffee and tea website and zip code is not "highly offensive."

4. Whether Plaintiff states a viable claim for wiretapping in violation of the California Invasion of Privacy Act ("CIPA") Section 631, when he fails to allege that any third party read or attempted to read the contents of his communications with the Peet's website in transit and does not otherwise allege that Peet's aided and abetted purported wiretapping.

5. Whether Plaintiff states a viable claim use of a pen register in violation of CIPA Section 638.51, when the statute's plain text and legislative history show that it applies to telephone lines, not Internet communications, and Plaintiff otherwise consented to the purported capture of his IP address and basic device metadata allegedly supporting the claim.

6. Whether Plaintiff states a viable claim for common law fraud, deceit, and/or misrepresentation, when he fails to allege actual damages and does not plead that Peet's knowingly made a false statement.

7. Whether Plaintiff states a viable claim for unjust enrichment, when he seeks damages based on nearly identical factual allegations, does not allege that any of his personal information was disclosed, and fails to allege an identifiable benefit retained by Peet's.

8. Whether Plaintiff can assert claims on behalf of a nationwide class, when the purported "interception" occurred at each individual visitor's device and Plaintiff concedes it must be a California-based device.

**MEMORANDUM OF POINTS AND AUTHORITY**

## I. INTRODUCTION

Plaintiff Sal Munoz contends the purported collection of his IP address and basic metadata about his browsing activity on a public retail website offering coffee and tea products infringed his privacy rights. It did not. Plaintiff alleges only that he accessed Peet's Coffee's website, www.peets.com, and at most, browsed for information about certain coffee and tea products available in his area and entered his zip code to filter for those results. Recasting such commonplace website browsing as a "Private Communication" and claiming he rejected cookies that allegedly captured this basic data does not cure the fatal flaw in Plaintiff's theory: no sensitive or confidential information was collected or disclosed. Not once does Plaintiff claim *he* submitted any sensitive personal, medical, or financial information on the site, nor does he allege any such confidential data *about him* was captured or shared *by Peet's*. This lawsuit is one of many nearly indistinguishable actions trying to stretch the contours of Article III and a decades-old criminal wiretapping statute to ordinary website technologies, hoping to capitalize on the statutory damages provisions of the California Invasion of Privacy Act ("CIPA"). The attempt fails. Plaintiff lacks standing, does not plead with the particularity required by Rule 9(b), and fails to state a claim for which relief may be granted. The Complaint should be dismissed in full.

The Court need not address the substantive deficiencies of Plaintiff's claims, because Plaintiff cannot satisfy the threshold requirements for Article III standing. Plaintiff does not offer factual allegations to suggest that his communications were misused by third parties. Regardless, under Ninth Circuit precedent, Plaintiff does not allege that he entered ***sensitive*** information on the Peet's website. Rather, Plaintiff's allegations reduce to this: he purportedly visited the Peet's website to browse for coffee and tea products in his area, and certain cookies fired before he engaged with the website's cookie banner and continued firing after he adjusted his cookie preferences. Under these facts, any purported statutory or common law violation (and there was none) does not amount to a "highly offensive" intrusion sufficient to confer standing. The action should be dismissed without leave to amend for lack of standing pursuant to Rule 12(b)(1).

Plaintiff's claims also fail to satisfy the pleading standards imposed by Rule 9(b). Because

his entire Complaint hinges on Peet's alleged misrepresentation that website visitors could reject non-strictly required cookies, Plaintiff must plead the "who, what, when, where, and how" of the alleged misconduct for each cause of action with particularity. Plaintiff's vague allegations as to the "what" and "when" elements of his claims fall short of this heightened pleading standard, which provides an independent basis to dismiss the Complaint.

Turning to the substance of Plaintiff's claims, Plaintiff fails to state a claim upon which relief can be granted as required by Rule 12(b)(6). Plaintiff's invasion of privacy and intrusion upon seclusion claims fail for the same reason Plaintiff lacks standing: he does not specify what data is at issue, but the alleged disclosure of Plaintiff's routine public browsing activity on a coffee and tea website is not highly offensive. Plaintiff's CIPA claims fare no better. First, to state a claim for wiretapping under CIPA Section 631, Plaintiff must plead interception of *contents in transit*, as well as aiding and abetting—he fails to do so, and his Section 631 claim fails as a result. Second, Plaintiff's CIPA Section 638.51 claim fails because the statute's plain text and legislative history show that the statute does not apply to Peet's alleged use of internet-based technology. Further, Plaintiff necessarily consented to the collection of the IP address and basic device metadata forming the basis of his purported pen register claim. Plaintiff's common law fraud claim also fails because he does not allege that Peet's knowingly made a false statement or that he suffered actual damages. Plaintiff's unjust enrichment claim fails because Plaintiff has an adequate remedy at law and does not plead an identifiable benefit to Peet's. Finally, Plaintiff cannot assert claims on behalf of a nationwide class because the purported "interception" occurred at the location of each individual visitor's device, meaning wherever that website visitor was located at the time they visited the Peet's website. Choice-of-law principles dictate that the law of the state in which the visitor was located would thus apply to the allegations at issue.

For these reasons, the Complaint should be dismissed in full.

## II. PLAINTIFF'S ALLEGATIONS

### A. Peet's Website

Peet's operates a publicly available website accessible to anyone with an internet connection at www.peets.com. (ECF No. 1 ("Compl.") ¶ 1.) The Peet's website allows visitors to

learn about and browse for coffee and tea products. (*Id.* ¶ 23.) Plaintiff further alleges that Peet's uses standard technologies on its website called cookies as part of its routine marketing and website analytics. (*Id.* ¶ 2.) As Plaintiff describes them, "[c]ookies are small text files that are sent by a website server to a user's web browser and stored locally on the user's device." (*Id.* ¶ 18.) Plaintiff claims that Peet's use of standard third-party cookies[1] captured browsing activity and "Private Communications" between Peet's and visitors to its public website. (*Id.* ¶ 21.) The so-called "Private Communications" include the visitor's basic interactions and history on the Peet's website, demographic information, interests and preferences, shopping behavior on the Peet's website, basic device metadata, the referring URL, session information, user identifiers, and certain geolocation data derived from an IP address. (*Id.*)

Plaintiff alleges that when a visitor accesses the Peet's website, the visitor's location is estimated based on the visitor's IP address and the site presents the visitor with a cookie banner. (*Id*. ¶¶ 1, 23.) The cookie banner discloses that the website uses cookies and gives visitors options to control cookies settings. (*Id*. ¶ 1.) For example, website visitors can accept or reject "Analytics and Statistics," "Marketing and Retargeting," and "Functionality" cookies, but cannot reject "Strictly Required Cookies." (*Id*. ¶ 27.) Plaintiff alleges that cookies fire before users interact with the banner and, after visitors adjusted the cookie preferences, certain cookies continued to fire and captured basic browsing activity that Plaintiff characterizes as "Private Communications" described above. (*Id*. ¶ 3.)

Specifically, according to Munoz, when a user navigates to the website, they are presented with a pop-up banner at the bottom of the screen stating:

> This website uses various technologies including cookies for personalization, website usage and performance measurement, and targeted advertising. Information about your side visit may be stored or shared with third parties as identified in our Privacy Policy.

(*Id.* ¶ 26.)

The linked Privacy Policy "describes the types of information [Peet's] collects, how [Peet's] may use that information, to whom and under what circumstances [Peet's] may disclose

[1] Third-party cookies are connected to a third-party domain or webserver. (*See id.* ¶¶ 2, 20.)

it, and how [Peet's] protects it." (Declaration of Rachel Straus ("Straus Decl."), Ex. A.) The website is governed by the Terms of Use ("TOU"), which incorporates by reference the notices in the Privacy Policy. (*See id.* Ex. B.) As is industry standard, users are notified of the TOU in a variety of ways: a hyperlink that appears on every page of the website, in pop-up windows such as the one shown on pages 12 to 15 of the Complaint, in the check-out window when making a purchase, and in the customer service chat box. (Straus Decl. ¶ 8.) The TOU includes an arbitration provision requiring "any legal dispute between [the website user] and Peet's concerning or arising out of [the TOU]" to be "resolved through binding individual arbitration."[2] (Straus Decl., Ex. B.)

**B. Plaintiff's Allegations About His Use of the Website**

Plaintiff claims that he visited the website "on one or more occasions during the last four

---

[2] Munoz does not allege whether he viewed the TOU or was aware of the arbitration provision. If the Court denies this Motion, Peet's intends to seek discovery related to whether Munoz viewed or was aware of the arbitration provision in the TOU and reserves all rights to compel Munoz to arbitrate. To the extent Munoz's claims survive, this will be a significant issue in this case because putative class members are differently situated as to whether they are required to arbitrate their claims against Peet's. For example, as described further below, an arbitrator has already held that putative class member Cheryl Britton must arbitrate her identical claims against Peet's. (*See* Straus Decl., Ex. D); *see, e.g.*, *Andrade v. Am. First Finance, Inc.*, No. 18-cv-06743-SK, 2022 WL 3369410, at *4-5 (N.D. Cal. Aug. 16, 2022) (denying class certification for failure to meet the typicality and adequacy requirements, where the named plaintiff did not consent to the arbitration provision and holding that "[e]ven if a large number of putative class members were to contest their consent to the arbitration provision . . . , separate mini-trials would be required to determine whether each individual were allowed to proceed in the litigation").

On October 16, 2024—more than a year before this case was filed—Plaintiff's counsel filed an AAA arbitration demand on Britton's behalf alleging nearly identical website/cookie-banner facts. (Straus Decl., Ex. C, Demand ¶ 4; *see also* Compl. ¶ 1.) Britton sought a declaration that the TOU arbitration provision and class waiver were unenforceable. (Straus Decl., Ex. C, Demand ¶ 31.) Britton's/Munoz's counsel was explicit that they pursued this strategy to avoid an automatic stay and appeal following a denial of a motion to compel arbitration under *Coinbase, Inc. v. Bielski*, 599 U.S. 736 (2023), and once the arbitrator granted Britton's "motion re non-arbitrability," Plaintiff's counsel would file a class action on behalf of Britton against Peet's. (Straus Decl. ¶ 7.) The strategy backfired. The arbitrator held that Peet's TOU arbitration agreement was enforceable and required Britton to arbitrate her claims so instead of filing this case on behalf of Britton, Plaintiff's counsel filed it on behalf of Munoz. (*Id.* Ex. D at 3.) The fact that putative class members are differently situated as to whether they are bound by the arbitration agreement in the TOU's on Peet's website is just one of the many reasons this case should not be certified. To the extent Munoz survives this pleading challenge, and to the extent necessary, Peet's will raise these arguments at the appropriate juncture.

years, including in or around, August 2025." (Compl. ¶ 105.) He alleges that he adjusted the settings in his preferences to only allow "Strictly Required" cookies before continuing to "browse" the website. (*Id.* ¶ 109.)

Plaintiff admits that his interactions with the website were limited. He only "searched for and clicked links to view Peet's local menu offerings" and "entered his zip code into a text field," which allowed the website to provide the local offerings he requested. (*Id.* ¶ 107.) He does not specify which information he allegedly entered was captured or used by third parties. Plaintiff also does not claim that he provided any additional "demographic data," such as his name, age, or gender (*cf. id.* ¶ 21), or that he entered any sensitive financial or medical information. Thus, at most, Plaintiff alleges that the cookies at issue captured non-sensitive data like his IP address (as is required for websites to function), basic metadata about his device or browser, and his browsing and filtering activity on the public coffee and tea website to look at local menu options for cold brew. (*See id.* ¶ 107.)

## III. LEGAL STANDARD

Under Rule 12(b)(1), a district court must dismiss any action over which it lacks subject matter jurisdiction. The plaintiff bears the burden of establishing Article III standing for each claim and each form of relief sought. *TransUnion LLC v. Ramirez,* 594 U.S. 413, 430-31 (2021). To establish Article III standing, "a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *Id.* at 423.

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). If the complaint pleads facts "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). Conclusory allegations are not entitled to the presumption of truth, and a plaintiff "armed with nothing more than conclusions," "labels," or "[t]hreadbare recitals of the elements of a cause of action" fails to state a claim. *Id.* at 678-79. Claims also may be dismissed based on a dispositive

issue of law. *Seismic Reservoir 2020, Inc. v. Paulsson*, 785 F.3d 330, 335 (9th Cir. 2015).

## IV. ARGUMENT

### A. Plaintiff Fails to Allege a Concrete Injury Sufficient to Confer Article III Standing Because No Sensitive Data Is at Issue.

To establish Article III standing, Plaintiff must show he "suffered an injury in fact that is concrete, particularized, and actual or imminent." *TransUnion*, 594 U.S. at 423. A harm is "concrete" only if it bears a "close relationship" to a harm "traditionally recognized as providing a basis for lawsuits in American court." *Id.* at 425. Plaintiff must therefore allege more than a violation of his statutory rights to assert a concrete injury for Article III. *See Popa v. Microsoft Corp.*, 153 F.4th 784, 789-90 (9th Cir. 2025) (explaining that plaintiff must allege an injury with "a close historical or common-law analogue" (quoting *TransUnion*, 594 U.S. at 424)). Here, Plaintiff purports to allege harm in the form of an invasion of privacy; diminution in value of his personal information; and deprivation of the right to control dissemination of his online activities. (*See* Compl. ¶¶ 133, 143, 182-83.) None rises to the level of concrete harm required by Article III.

#### 1. Plaintiff does not allege a legally protected privacy interest in his browsing activities on the Peet's website.

"To survive a motion to dismiss, a plaintiff must identify the 'specific personal information []he disclosed that implicates a protectable privacy interest.'" *Mikulsky v. Noom, Inc.*, 682 F. Supp. 3d 855, 864 (S.D. Cal. 2023) (citation omitted) (granting defendant's motion to dismiss for lack of subject matter jurisdiction in similar case where plaintiff failed to specify the "personal information" allegedly disclosed). Not just any information will do. "For purposes of a privacy claim, 'a concrete injury arises only where the alleged harm involves personal information,' i.e., information the disclosure of which 'would be highly offensive to a reasonable [person].'" *In re USA Today Co., Inc. Internet Tracking Litig.*, No. 24-cv-05150-MMC, 2026 WL 932655, at *2 (N.D. Cal. Apr. 6, 2026) (citations omitted) (holding plaintiffs failed to allege a cognizable injury where plaintiffs alleged defendant permitted third-party cookies to collect IP addresses and other device information). Plaintiff does not satisfy this standard—he alleges only that he searched for local menu offerings and entered his zip code to do so. Regardless of his interactions with the cookie banner, the alleged capture and disclosure of such data is not "highly offensive."

Addressing allegations nearly identical to those of Munoz, another district court recently held that the plaintiff failed to allege an injury sufficient to support Article III standing based on the data elements allegedly at issue. *See Garcia v. Blackhawk Network, Inc.*, No. 2:25-CV-07550-JLS-SSC, 2026 WL 925028 (C.D. Cal. Apr. 1, 2026). Like Plaintiff, the *Garcia* plaintiff alleged that "third-party cookies were placed on users' devices even when they selected the 'required-only' cookie option." *Id.* at *1. The complaint asserted the same common law claims—invasion of privacy, intrusion upon seclusion, common law fraud, and unjust enrichment—as well as violations of the same CIPA provisions, sections 631 and 638.51. *Id.* at *2. In concluding that it lacked subject matter jurisdiction, the *Garcia* court explained that the plaintiff failed to "plead that Defendant's tracking technology caused her to suffer an injury that is analogous to a common-law privacy tort." *Id.* at *4. The court rejected plaintiff's contention that intrusion upon seclusion supplied the relevant common law analogue, finding that "a misrepresentation that unnecessary third-party tracking cookies would not be placed on her device" was not the type of "highly offensive" intrusion actionable at common law. *Id.* at *5. The court further noted it did not find persuasive the reasoning of other courts in this Circuit concluding that a misrepresentation alone is sufficient to meet the high bar for offensiveness. *Id.*

The court explained that there are "at least two ways tracking technologies may result in highly offensive conduct": (1) where "the information collected could be especially sensitive," like health or financial information, or (2) where "the scope of the collection may be so broad, for example by tracking a Plaintiff's activity across other websites, that it renders the tracking highly offensive." *Id.* The plaintiff alleged neither. As to the first, the court noted that the defendant sold gift cards and found that the information allegedly shared was not "embarrassing, invasive, or otherwise private." *Id.* (citation omitted). As to the second, the court distinguished cases like *In re Facebook, Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020), where "the 'cradle to grave' consumer profiles at issue that tracked activity across browsing sessions and websites *were created by the Defendant*." *Garcia*, 2026 WL 925028, at *5 (emphasis added). "At best," the court concluded, the *defendant* merely "inform[ed] a third party about Plaintiff's interactions with its website." *Id.* Such allegations are insufficient to establish a concrete injury. *Id.* at *6.

The facts here are indistinguishable in all material respects. Like in *Garcia*, Plaintiff alleges that certain third-party cookies continued to fire and capture basic browsing data on the Peet's website after visitors adjusted their cookie preferences. Although Plaintiff makes a variety of general allegations about the type of information that *could* be collected, he does not specifically allege this information was collected *from the Peet's website about him*. (*Contrast* Compl. ¶ 21 (claiming that the third-party cookies on the Website *could* collect various data elements) *with id.* ¶ 107 (alleging only that he "searched for and clicked links to view Peet's local menu offerings" and "entered his zip code").)

As in *Garcia*, Plaintiff fails to allege his sensitive information was disclosed—the only data he identifies that could have been captured include his zip code and that he likes cold brew protein smoothies. That is not enough. Plaintiff identifies no disclosure of sensitive health or financial data, or any "embarrassing, invasive, or otherwise private information" that could give rise to a legally protected privacy interest. *See Popa*, 153 F.4th at 791 (under *TransUnion*, finding no concrete injury where Plaintiff "identifies no embarrassing, invasive, or otherwise private information collected" by website); *see also* Straus Decl., Ex. I, *Natalie Brahm, et al., v. Hospital Sisters Health System, et al.,* No. 23-cv-444-wmc, ECF No. 175, Order at 13-16 (W.D. Wis. May 1, 2026) (dismissing case for lack of standing where plaintiffs failed to show that third party *actually* identified the plaintiffs by operation of the pixel technologies on defendants' websites and that plaintiffs lacked "evidence that *defendants* versus other third parties (or even plaintiffs themselves based on their own voluntary internet disclosures) caused plaintiffs' [protected health information] to be shared"). The data at issue and how it was used control the analysis. *Contrast Khamooshi v. Politico LLC*, 786 F. Supp. 3d 1174, 1182 (N.D. Cal. 2025) (no standing where plaintiffs failed to allege that private information was collected), *and* Straus Decl., Ex. H, *Alexander Sisti v. Bosley Inc. & Bosley Med. Grp.*, No. 2:25-cv-10669-JFW-DFM, ECF No. 70, Op. at 5 (C.D. Cal. Apr. 27, 2026) (no standing where plaintiff alleged request to schedule a hair-loss consultation and a social media identifier was disclosed), *with Gabrielli v. Haleon US Inc.*, 815 F. Supp. 3d 852, 867 (N.D. Cal. 2025) (finding standing where defendant allegedly disclosed plaintiff's browsing activity on *healthcare* website after plaintiff rejected all cookies).

Nor does Plaintiff allege that Peet's created the type of cradle to grave consumer profiles at issue in *In re Facebook*. Like in *Garcia*, Plaintiff's allegations are limited to his activity on *the Peet's website*. Plaintiff does not claim that *Peet's* tracked or collected sensitive information about him from other websites. *Contrast Popa*, 153 F.4th at 791 ("[T]he monitoring of [plaintiff's] interactions with [defendant's] website seems most similar to a store clerk's observing shoppers in order to identify aisles that are particularly popular or to spot problems that disrupt potential sales."), *with In re Facebook*, 956 F.3d at 598-99 ("Facebook allegedly constantly compiled and updated its database with its users' browsing activities, including what they did when they were not using Facebook."). Whatever was collected, or not, about Plaintiff based on his activity on other websites is not alleged and is not traced to *Peet's*—the only defendant in this action.

District courts in this Circuit have repeatedly held there is no right to privacy in the types of data Plaintiff claims could have been collected, including his zip code. *See, e.g.*, *Heeger v. Facebook, Inc.*, 509 F. Supp. 3d 1182, 1189 (N.D. Cal. 2020) (IP address); *In re USA Today*, 2026 WL 932655, at *2 (IP address, device type, and browser type); *Mikulsky,* 682 F. Supp. 3d at 864 (IP address and user input data); *Khamooshi,* 786 F. Supp. 3d at 1179 (IP address and browser and device data); *cf. Big 5 Sporting Goods Corp. v. Zurich Am. Ins. Co.*, 635 F. App'x 351, 354 (9th Cir. 2015) ("California does not recognize any common law or constitutional privacy right causes of action for requesting, sending, transmitting, communicating, distributing, or commercially using ZIP Codes.").[3] Under the facts alleged, Plaintiff has not identified concrete harm required by *TransUnion*, *Popa*, and their progeny. The case should be dismissed for lack of standing.

---

[3] Some district courts in this Circuit have found standing based on the collection of IP address. *See, e.g.*, *Drummer v. Costar Grp., Inc.*, No. EDCV 25-1047 JGB (SPX), 2025 WL 3190656, at *3 (C.D. Cal. Oct. 22, 2025); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924, 932 (N.D. Cal. 2024); *Mirmalek v. L.A. Times Commc'n. LLC*, No. 24-CV-01797-CRB, 2024 WL 5102709, at *4 (N.D. Cal. Dec. 12, 2024); *Keskinen v. Lush Handmade Cosmetics LLC*, 770 F. Supp. 3d 1234, 1244 (C.D. Cal. 2025). Peet's respectfully submits that *Garcia* is better reasoned and notes that Judge Bernal recently certified the following question for interlocutory appeal in one of these cases: "Does the transmission to third parties of IP addresses and similar information voluntarily shared with websites constitute an injury with a close relationship to a harm traditionally recognized as a basis for a lawsuit?" *Drummer v. CoStar Grp.*, No. EDCV 25-1047 JGB (SPX), 2026 WL 712922, at *2 (C.D. Cal. Feb. 13, 2026). Peet's reserves all rights with respect to the pending *Drummer* appeal and any forthcoming ruling from the Ninth Circuit.

**2. Plaintiff does not otherwise allege concrete harm under Article III.**

Plaintiffs' two other theories of concrete harm are likewise insufficient to confer standing.

***First,*** Plaintiff cannot rely on the purported devaluation of his personal information to establish a concrete injury. "[T]o successfully demonstrate injury in fact by diminution in value of [personal information], Plaintiff[] must 'establish both the existence of a market for [his] personal information and an impairment of [his] ability to participate in that market.'" *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022) (quoting *Svenson v. Google Inc.*, No. 13-CV-04080-BLF, 2016 WL 8943301, at *9 (N.D. Cal. Dec. 21, 2016)). A "purely hypothetical" loss of value is insufficient to confer standing. *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019) (holding plaintiffs' economic-loss theory did not confer standing). Here, Plaintiff states in conclusory fashion that "[he] and Class members have . . . suffered harm in the form of diminution of the value of his and their private and personally identifiable information and communications." (Compl. ¶ 182.) However, he does not plausibly allege that his information, "when not disclosed, has independent economic value to [him]," that he intended to sell it, or that "someone else would have bought it as a stand-alone product." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d at 784; *see also Greenstein*, 585 F. Supp. 3d at 1229 (holding alleged diminished value of personal information insufficient to confer standing without allegation that the information became less valuable or plaintiffs planned to sell it); *Sisti*, Or. at 6 (same, explaining plaintiff did not allege "he ha[d] ever sold that data in the past or intend[ed] to sell it in the future").

***Second,*** Plaintiff's allegation that he suffered an informational injury in the form of deprivation of the right to control dissemination of his activities on a public website does not constitute a concrete injury because there is no common law analogue. Another district court in this Circuit recently addressed this issue in a similar case. There, plaintiff alleged that defendant used tracking technologies that collected far more sensitive health-related information and disclosed it to third parties without his consent. *Maghoney v. Dotdash Meredith, Inc.*, No. 24-cv-2394-AJB-BJW, 2026 WL 497402, at *1-2 (S.D. Cal. Feb. 23, 2026). The court explained that the Ninth Circuit recognizes informational injuries only when a plaintiff is deprived of information to

which he is statutorily entitled, and there is no statutory protection for basic website browsing data and zip code information. *Id.* at *6. Like in *Maghoney*, Plaintiff alleges no requisite deprivation. *See id.* ("Plaintiff alleges he suffered informational injury because he was 'deprived control over the dissemination of his private online activities.' However, Plaintiff does not cite any cases which have recognized such an 'informational harm.'" (citation omitted)); (*cf.* Compl. ¶ 183 ("[Peet's] actions caused damage to and loss of Plaintiff's and Class members' property right to control the dissemination and use of their personal information and communications.").)

In short, Plaintiff does not allege disclosure of any sensitive or highly offensive personal information that would implicate a legally protected privacy interest, and his generalized assertions of diminished value of personal information and loss of control over information are conclusory and lack any recognized common law analogue. Plaintiff fails to allege a concrete injury for Article III purposes, and the Complaint should be dismissed without leave to amend.

### B. Plaintiff Fails to Satisfy Rule 9(b)'s Heightened Pleading Standard.

When a plaintiff "allege[s] a unified course of fraudulent conduct and rel[ies] entirely on that course of conduct as the basis of [a] claim . . . the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b)." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (fifth alteration in original) (quoting *Vess v. Ciba-Geigy Corp. USA,* 317 F.3d 1097, 1103-04 (9th Cir. 2003)). This is true even where the word "fraud" is not used. *Id.* at 1124 (applying Rule 9(b) to plaintiff's consumer protection claims that "alleg[ed] facts that necessarily constitute[d] fraud").

Each of Plaintiff's claims is subject to Rule 9(b)'s heightened pleading standard because they sound in fraud. The Complaint is clear: Plaintiff's claims are premised on the allegation that Peet's represented that website visitors could opt out of non-strictly required cookies but still allowed third parties to place cookies that allegedly tracked online activities. (*See, e.g.*, Compl. ¶¶ 2-4.) Plaintiff pleads that this alleged misrepresentation underpins each of his claims: it creates a reasonable expectation of privacy (*see id.* ¶¶ 127, 140), renders Peet's conduct "highly offensive" (*see id.* ¶ 141), and supplies the "wrongful conduct" necessary for unjust enrichment (*see id.* ¶¶ 190-91). Courts routinely apply Rule 9(b) to such allegations. *See, e.g.*, *de Ayora v. Inspire*

*Brands, Inc.*, No. 25-CV-03645-AGT, 2025 WL 3707561, at *3 (N.D. Cal. Dec. 22, 2025) (applying Rule 9(b) to similar claims and finding plaintiffs failed to satisfy heightened pleading standards); *Williams v. Facebook, Inc.*, 498 F. Supp. 3d 1189, 1200-01 (N.D. Cal. 2019) (applying Rule 9(b) to intrusion upon seclusion and invasion of privacy claims that "sounded in fraud").[4]

To satisfy Rule 9(b), Plaintiff must plead with particularity "the who, what, when, where, and how of the misconduct alleged." *Kearns,* 567 F.3d at 1126. He fails to offer specific allegations about the "what" and "when" of his interactions with the website. Plaintiff makes only general allegations about information that could be collected; he does not make specific allegations about information collected *about him* because of his interactions with the Peet's website. (*See* Compl. ¶ 21.) He also fails to plead what representations regarding cookies were made on the Peet's website on the specific dates Plaintiff visited the website or how the website used any cookies placed on his device on those specific dates. Instead, the Complaint relies on undated screenshots of website visits from an unidentified "Website user[]." (*Id.* ¶¶ 32, 40, 42, 48, 60, 65, 67, 70, 78, 81, 83, 89, 92). Such general allegations are not "specific enough to give [Peet's] notice of the particular misconduct." *Ovation Toys Co. v. Only Hearts Club*, 675 F. App'x 721, 723 (9th Cir. 2017) (quoting *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001), and affirming dismissal of fraud claim under Rule 9(b) for failing to plead dates, times, and places where fraud occurred).

Under Rule 9(b), Plaintiff's Complaint should be dismissed in its entirety.

[4] Although another district court recently concluded Rule 9(b) only applied to the plaintiffs' fraud claims in two cases, *see Wiley v. Universal Music Grp., Inc.*, No. 25-CV-03095-PCP, 2025 WL 3654085, at *9 n.4 (N.D. Cal. Dec. 17, 2025), and *Shah v. MyFitnessPal, Inc.*, No. 25-CV-04430-PCP, 2026 WL 216334, at *8 n.3 (N.D. Cal. Jan. 27, 2026), Peet's respectfully disagrees. As explained and other courts have concluded, each of Plaintiff's claims is premised on the existence of the same alleged misrepresentation. (*See, e.g.*, Compl. ¶ 127 ("Plaintiff . . . had a reasonable expectation of privacy under the circumstances, as Defendant affirmatively promised users they could "Choose Type of Cookies You Accept Using" before proceeding to browse the Website."); *id.* ¶ 141 ("Defendant's intentional intrusion into Plaintiff's . . . Private Communications would be highly offensive to a reasonable person given that Defendant represented that Website users could adjust settings in the cookie preferences window to decline or reject all categories of cookies."); *id.* ¶ 191 ("Defendant was unjustly enriched as a result of its wrongful conduct, including through its misrepresentation that users could decline or reject all categories of cookies.").)

### C. Plaintiff Also Fails to State His Claims

#### 1. Plaintiff cannot state claims for invasion of privacy or intrusion upon seclusion.

Because the elements are similar, courts often consider invasion of privacy and intrusion upon seclusion claims together and "ask (1) whether there is a reasonable expectation of privacy, and (2) whether the intrusion was highly offensive." *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1088 (N.D. Cal. 2022) (dismissing privacy claims for failure to allege a highly offensive intrusion where defendant purportedly tracked plaintiffs' usage and engagement with non-Google apps without their knowledge or consent). Plaintiff's allegations do not satisfy this standard.

The crux of Plaintiff's privacy claim is that Peet's allegedly disclosed information to third parties about his browsing activity after he opted out of non-strictly required cookies on the Peet's website. (*See, e.g.*, Compl. ¶ 127 ("Plaintiff . . . reasonably expected that, if [he] declined or rejected all such cookies and/or tracking technologies, [Peet's] would not permit the Third Parties to track and collect Plaintiff's . . . Private Communications.").) Given the nature of the data that could possibly be at issue, any such purported disclosure is not "highly offensive." This is true regardless of Plaintiff's allegations related to the cookie banner. It's the data, and not the representation that is core to the analysis. To satisfy this element, based on the data allegedly captured, Plaintiff must plead an "egregious breach of social norms." *In re Yahoo Mail Litig.*, 7 F. Supp. 3d 1016, 1038 (N.D. Cal. 2014). The bar to establish such an invasion is high: "[e]ven disclosure of personal information, including social security numbers, does not constitute an 'egregious breach of the social norms' to establish an invasion of privacy claim." *Belluomini v. Citigroup, Inc.,* No. CV-13-01743 CRB, 2013 WL 3855589, at *6 (N.D. Cal. July 24, 2013).

Here, regardless of any interaction with the cookie banner, Peet's alleged use of third-party cookies on a public website selling coffee and tea products to capture routine browsing information and analytics does not constitute an "egregious breach" of social norms. The data at issue drives the analysis, and the information about Plaintiff's website interactions (at most, his zip code and interest in cold brew) is not "highly offensive." *See, e.g.*, *Garcia*, 2026 WL 925028, at *5 (under similar facts alleged here, holding alleged disclosure was not highly offensive because "no embarrassing, invasive, or otherwise private information" was shared); *In re Google,*

*Inc. Privacy Policy Litig.,* 58 F. Supp. 3d 968, 987-88 (N.D. Cal. 2014) (holding disclosure of users' personal identifying information, browsing habits, search queries, responsiveness to ads, demographic information, and declared preferences to third parties—contrary to its own policies—was not highly offensive); *Dawidzik v. Tesla, Inc.*, No. EDCV 25-01982-KK-SPX, 2025 WL 3786963, at *4 (C.D. Cal. Dec. 29, 2025) (finding no serious invasion of privacy where defendant "caused the user's browser to transmit certain data to third-party servers only when the user visited Defendant's website"); *Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1025 (N.D. Cal. 2012) (disclosure of users' browser history to third parties was not highly offensive); *In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1063 (N.D. Cal. 2012) (disclosure of "unique device identifier number, personal data, and geolocation information from Plaintiffs' [devices]" does not constitute an egregious breach of social norms); *Folgelstrom v. Lamps Plus, Inc.,* 195 Cal. App. 4th 986, 992 (2011) ("[O]btaining plaintiff's address without his knowledge or permission, and using it to mail him coupons and other advertisements . . . [is] routine commercial behavior."); *see also Hammerling,* 615 F. Supp. 3d at 1090 (collecting cases).

Additionally, disclosing information is not highly offensive when it is allegedly disclosed for "legitimate business reasons," as opposed to "socially repugnant or unprotected reasons" such as "harassment, blackmail, or prurient curiosity." *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 297-98 (2009). Here, Plaintiff alleges Peet's disclosed the browsing activity for marketing purposes—and Plaintiff does not allege to have received any targeted ads as a result. (*See, e.g.*, Compl. ¶ 5.) Marketing is a legitimate business reason, not a "highly offensive" intrusion.

**2. Plaintiff's section 631(a) claim fails to allege interception in transit or aiding and abetting.**

In relevant part, CIPA Section 631(a) makes it unlawful to "willfully and without the consent of all parties to the communication, . . . read[], or attempt[] to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit," or use information so obtained. Cal. Penal Code § 631(a). It is also unlawful to "aid[], agree[] with, employ[], or conspire[] with any person" to do either. *Id.* Plaintiff claims that Peet's "aided, agreed with, employed, permitted, or otherwise caused" the purported wiretapping of Plaintiff, by configuring its website "to store the Third Parties' cookies and to transmit those cookies alongside

Private Communications." (Compl. ¶ 157.) But he does not specify the "contents" that were captured or allege an interception in transit, and he does not adequately allege aiding and abetting.

***First***, Plaintiff fails to allege that anyone attempted to read or learn the "contents" of a substantive message while "in transit." "Contents" are "the substance, purport or meaning of [the] communication"—in other words, contents are the "intended message conveyed by the communication," not "record information regarding the characteristics of the message that is generated in the course of [that] communication." *In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106 (9th Cir. 2014); *Graham v. Noom, Inc.*, 533 F. Supp. 3d 823, 833 (N.D. Cal. 2021) ("The 'contents' of a communication under CIPA and the federal Wiretap Act are the same."). Plaintiff does not specify which "contents" he entered were allegedly captured. As Judge Chhabria recently explained in granting summary judgment to the defendant in a similar action, Section 631 demands "something more than just [the] intercept[ion] [of a] communication while it is in transit"; rather, it requires that a third-party interloper actually "read, attempt to read, or attempt to learn the contents of [the] communications . . . while those communications [are] in transit." *Doe v. Eating Recovery Ctr. LLC*, 806 F. Supp. 3d 1109, 1118-19 (N.D. Cal. 2025); *see also Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 878 (9th Cir. 2002) (explaining that for a communication "to be 'intercepted,'" it "must be acquired during transmission, not while it is in electronic storage"). "This conclusion is consistent with the ordinary meaning of 'intercept,' which is 'to stop, seize, or interrupt in progress or course before arrival." *Konop*, 302 F.3d at 878 (citation omitted); *see also R.C. v. Sussex Publishers, LLC*, No. 24-CV-02609-JSC, 2025 WL 948060, at *7 (N.D. Cal. Mar. 28, 2025) (dismissing CIPA claim without allegation that "Google views or reads the information while it is in transit").

Plaintiff fails to make factual allegations on the purported "contents" that were captured during his visits or on the "in transit" element. Rather, he offers conclusory assertions that unidentified communications were acquired "in real time"—but he does not allege that contents were read or attempted to be read while they were in transit. (*See* Compl. ¶ 158 (alleging that a third party "read, attempted to read, and/or learned the contents or meaning of electronic communications of Plaintiff . . . , on the one hand, and Defendant, on the other, while the

electronic communications were in transit or were being sent from or received at any place within California").) It is also not enough to allege data was collected in real time and stored for later use. *See, e.g.*, *Torres v. Prudential Fin., Inc.*, No. 22-CV-07465 (CRB), 2025 WL 1135088, at *5 (N.D. Cal. Apr. 17, 2025) ("Even if [third-party] software intercepts the contents of Plaintiffs' communications in real time and stores the recording on [a third party's] server that [third party] employees can access, nothing in the record plausibly indicates that [the third party] reads or attempts to read the contents of the communication *while they are in transit*.").

Plaintiff's barebones allegations fail to state a claim of interception in transit under CIPA Section 631, and the purported wiretapping claim must be dismissed. *See de Ayora*, 2025 WL 3707561, at *7 (dismissing CIPA Section 631 claim alleging near identical facts, explaining "Plaintiffs' mere assertion that Defendants or third parties acquire the communications contemporaneously, without factual support, is insufficient to survive Defendants' motion to dismiss"); *Quigley v. Yelp, Inc.*, No. 17-CV-03771-RS, 2018 WL 7204066, at *4 (N.D. Cal. Jan. 22, 2018) (dismissing claim for failure to "allege[] facts giving rise to an inference that his communications were intercepted while 'in transit'"); *Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) ("[V]ague allegations fail to explain how the software works or how the interception occurs.").

***Second***, Plaintiff's Section 631 claim independently fails because he does not allege Peet's aided and abetted a wiretap. To do so, Plaintiff must allege facts showing Peet's had (1) "knowledge of the conduct that will violate the statute" and (2) "a purpose of aiding, agreeing with, or employing the third party to commit those acts." *Smith v. YETI Coolers, LLC*, 754 F. Supp. 3d 933, 942 (N.D. Cal. 2024). Plaintiff offers only a conclusory allegation, without any substantive facts, that Peet's "willfully aided" the providers of the analytics technologies in purportedly wiretapping Plaintiff simply by installing their software on its website. (Compl. ¶ 157.) That is not enough to state a viable claim.

Plaintiff cannot conflate an allegation that Peet's used routine analytics software with a plausible allegation showing Peet's willfully aided wiretapping. Plaintiff does not base his purported wiretapping claim on Peet's mere installation of third-party software, but rather on lack

of consent premised on the allegation that the cookie banner was not functioning properly. Plaintiff offers no facts suggesting that the purported malfunction was the result of Peet's "willful[]" conduct, not an inadvertent error. Nor does Plaintiff factually allege that Peet's intentionally set up a cookie banner to aid third parties in wiretapping. Plaintiff's allegations are insufficient to plausibly establish aiding and abetting liability under CIPA. *See Smith*, 754 F. Supp. 3d at 943 (granting motion to dismiss and finding allegations the defendant knew software was placed on its website to "collect[] consumers' sensitive information" were insufficient "to draw a plausible inference that [d]efendant knowingly agreed with or employed [the software provider] to engage in conduct that violated the wiretapping statute"); *Esparza v. UAG Escondido A1 Inc.*, No. 23CV0102 DMS (KSC), 2024 WL 559241, at *6 (S.D. Cal. Feb. 12, 2024) (same).

**3. Plaintiff fails to allege an unlawful pen register under CIPA section 638.51 or lack of consent.**

Plaintiff alleges that the third-party "cookies and the corresponding software code" at issue are "pen registers" under CIPA Section 638.51, because they captured Plaintiff's "IP address and user-agent information." (Compl. ¶ 170.) Plaintiff's pen register claim fails for two reasons.

*a. Collecting IP addresses and basic device metadata does not constitute an illegal pen register.*

Plaintiff rests his pen register claim on the theory that software that captures IP address information and basic device metadata is a "pen register." His theory does not align with the statute's plain text or legislative history.

California state courts have repeatedly explained that a website visitor's "IP address is not the type of information that parties are prohibited from collecting by CIPA." *E.g.*, *Rodriguez v. Plivo Inc.*, No. 24STCV08972, 2024 WL 5184413, at *2 (Cal. Super. Ct. Oct. 2, 2024) (dismissing with prejudice near identical Section 638.51 claim). For more than a decade, courts have repeatedly held that the federal prohibition on pen registers on which CIPA Section 638.51 is based "cannot be intended to prevent individuals who receive electronic communications from recording the IP information sent to them." *Capitol Recs. Inc. v. Thomas-Rasset*, No. 06-1497 (MJD/RLE), 2009 WL 1664468, at *3 (D. Minn. June 11, 2009) (discussing Pen Register Act, 18 U.S.C. § 3121); *see* Straus Decl., Ex. F, California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015)

(showing Section 638.51 was modeled on the federal law); *see also, e.g.*, *Pena v. GameStop, Inc.*, 670 F. Supp. 3d 1112, 1117 (S.D. Cal. 2023) (explaining that California courts routinely look to analogous federal laws when interpreting CIPA). Were it otherwise, "the Internet could not function because standard computer operations require recording IP addresses so parties can communicate with one another over the Internet." *Capitol Recs. Inc.*, 2009 WL 1664468, at *3; *accord In re Innovatio IP Ventures, LLC Patent Litig.*, 886 F. Supp. 2d 888, 895 (N.D. Ill. 2012).

With CIPA Section 638.51, the Legislature was not concerned with software or websites but "***telephone*** surveillance." Straus Decl., Ex. G, California Bill Analysis, A.B. 929 Assem. (Apr. 21, 2015) (emphasis added). The language of Section 638.51 derived from the definition of "'pen register' [a]s an electronic device which records all numbers called from (outgoing) a particular *telephone line*." *See id.* Ex. F, California Bill Analysis, A.B. 929 Assem. (Apr. 7, 2015) (quoting Los Angeles District Attorney's Office) (emphasis added). It says nothing about collection of non-telephone information, like IP address and basic device metadata. That understanding is reflected in statute's plain text: CIPA requires a court order authorizing the installation of a pen register to specify "[t]he number" and "physical location of the *telephone line* to which the pen register . . . is to be attached." Cal. Penal Code § 638.52(d)(3) (emphasis added); *see also id.* § 638.52(c) (providing that a "pen register . . . shall not" collect the physical location of the subscriber "except to the extent that the location may be determined from the *telephone number*" (emphasis added)). CIPA thus reflects that a "pen register" is a device "attached" to a "telephone line" with a "physical location." Cal. Penal Code § 638.52(d)(3).

Plaintiff's attempt to apply Section 638.51 to software that collects website visitors' IP addresses and basic device metadata cannot be squared with Section 638.51's legislative history and plain text. Plaintiff alleges that the software at issue is installed on a website (not a "telephone line"). The allegations fall well outside the scope of Section 638.51's prohibition. California state courts have repeatedly agreed, dismissing identical claims and holding that Section 638.51 applies only to telephones, and not to internet communications. *See Balabbo v. Wildflower Brands, LLC*, No. 25STCV20971, 2026 WL 1122773, at *9-10 (Cal. Super. Ct. Apr. 6, 2026); *Rodriguez v. Ink Am. Int'l Grp. LLC*, No. 25STCV15350, 2025 WL 4034985, at *2 (Cal. Super. Ct. Dec. 10, 2025);

*Aviles v. Liveramp, Inc.*, No. 24STCV19869, 2025 WL 487196, at *2 (Cal. Super. Ct. Jan. 28, 2025); *Sanchez v. Cars.com Inc.*, No. 24STCV13201, 2025 WL 487194, at *3 (Cal. Super. Ct. Jan. 27, 2025); *Casillas v. Transitions Optical, Inc.*, No. 23STCV30742, 2024 WL 4873370, at *4-5 (Cal. Super. Ct. Sept. 9, 2024); *Licea v. Hickory Farms LLC*, No. 23STCV26148, 2024 WL 1698147, at *3 (Cal. Super. Ct. Mar. 13, 2024); *see also* Straus Decl., Ex. E, *Heiting v. Wildflower Brands, LLC*, No. 25 STCV18507 (Cal. Super. Ct. Apr. 16, 2026).

Applying the *Erie* principles, which "require[] that the federal court grant or withhold relief as the state courts would," that should end the inquiry. *Begay v. Kerr-McGee Corp.*, 682 F.2d 1311, 1316 (9th Cir. 1982).[5] To the extent the Court finds any ambiguity in the language of the pen register statute, the rule of lenity directs that the question should be resolved in Peet's favor. *See Doe*, 806 F. Supp. 3d at 1118 (discussing rule of lenity and applying principle to grant summary judgment in defendant's favor in CIPA matter); *People v. Johnson*, 150 Cal. App. 4th 1467, 1481 (2007) ("Where [a] statute is susceptible of two reasonable constructions, a defendant is ordinarily entitled to that construction most favorable to him."). Plaintiff's Section 638.51 claim should be dismissed with prejudice—the statute does not apply to the technology at issue.

*b. Plaintiff consented to the recording of his IP address and basic device metadata.*

If Section 638.51 somehow applied, Plaintiff consented to the collection of his IP address and basic device metadata when he voluntarily navigated to and purportedly browsed the Peet's website. Consent may be inferred under CIPA in circumstances where "a reasonably prudent user would have been aware" that the data at issue was being recorded. *Silver v. Stripe Inc.*, No. 4:20-CV-08196-YGR, 2021 WL 3191752, at *4 (N.D. Cal. Jul. 28, 2021) (granting motion to dismiss

[5] Peet's acknowledges that there is a split in opinion between state and federal courts on the scope of Section 638.51's reach. *See, e.g.*, *Mirmalek v. L.A. Times Commc'ns LLC*, No. 24-cv-01797-CRB, 2024 WL 5102709 (N.D. Cal. Dec. 12, 2024); *Shah v. Fandom, Inc.*, 754 F. Supp. 3d 924 (N.D. Cal. 2024); *Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 WL 2939229 (N.D. Cal. Oct. 16, 2025). Peet's respectfully submits that those decisions do not align with the statute's text or legislative history and do not properly consider the *Erie* principles. The scope of Section 638.51 and application of the "pen register" definition to the technology at issue is before the California Courts of Appeal in *Variety Media, LLC v. Superior Court* (2d Dist.), and *Reuters News & Media, Inc. v. Superior Court* (6th Dist.). *See* Straus Decl., Exs. J-K. Peet's reserves all rights with respect to the pending appeals.

in CIPA case on issue of consent); *Torres v. Nutrisystem, Inc.*, 289 F.R.D. 587, 594 (C.D. Cal. 2013) (individual who "actually expected the [communication] to be recorded" can be deemed to "have implicitly consented to the recording by the very act of" initiating the communication).

Such is the case here. Plaintiff necessarily consented to the collection of his IP address and basic device metadata. As courts have explained, any reasonable website visitor understands in advance that his IP address "information [would be] provided" as part of any website interaction. *Heeger*, 509 F. Supp. 3d at 1190 (quoting *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008)). Indeed, the visitor *must* "voluntarily turn[] over" his IP address "in order to direct" the routing used to access the website, making it "inevitable that [a website] learns a [visitor]'s IP address" when they navigate to it. *Id.* at 1189-90. For this reason, courts have long held that there is no reasonable expectation of privacy in IP addresses or basic device metadata. *Id.* at 1190; *Forrester*, 512 F.3d at 510; *In re USA Today*, 2026 WL 932655, at *2; *Khamooshi,* 786 F. Supp. 3d at 1179. This is true regardless of Plaintiff's claims about Peet's cookie banner because Section 638.51 applies only to the "record[ing]" of the data; it does not regulate any purported subsequent sharing of data, rendering any purported banner interactions irrelevant. Cal. Penal Code 638.50(b).

Because Plaintiff "consensually engaged in [an internet] transaction" and "communicated his IP address [and basic device metadata] as part of" that transaction, the laws prohibiting pen registers "cannot prevent [the recipient] from recording that information." *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013).

**4. Plaintiff fails to state a claim for common law fraud, deceit, and/or misrepresentation.**

Common law fraud in California requires "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Kearns,* 567 F.3d at 1126 (citation omitted). In addition to failing to plead his fraud claim with the particularity required by Rule 9(b), *see supra* Section IV.B, Plaintiff's claim fails for two additional, independent reasons.

***First***, Plaintiff fails to allege "resulting damage." Plaintiff must allege "actual monetary loss" to state a claim for fraud under California law. *McGowan v. Weinstein*, 505 F. Supp. 3d

1000, 1016 (C.D. Cal. 2020) ("[I]n California, a plaintiff 'must suffer actual monetary loss to recover on a fraud claim.'") (citation omitted). This failure alone demands dismissal of his claim.

Instead of meeting the pleading standard, Plaintiff presents two theories on damages to support his purported fraud claim. Neither is sufficient to survive the pleading stage. To begin, Plaintiff claims he "suffered harm in the form of diminution of the value of his . . . private and personally identifiable information and communications." (Compl. ¶ 182.) Fatal to his theory, Plaintiff "ha[s] not plausibly alleged that [he] would either sell [his] data or pay anything to protect [his] data." *Walsh*, 2025 WL 2939229, at *19-20 (dismissing fraud claim based on similar allegations for failing to plausibly allege "actual damages"); *see also Hubbard v. Google LLC*, No. 19-CV-07016-SVK, 2024 WL 3302066, at *9 (N.D. Cal. July 1, 2024) (dismissing plaintiffs' consumer protection claims absent "facts explaining *how* Defendants' collection and use of their information reduces the value of that information"). Further, Plaintiff alleges that he lost his "property right to control the dissemination and use of [his] personal information and communications." (Compl. ¶ 183.) But "Plaintiff['s] personal information does not constitute property." *Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025) (dismissing plaintiffs' fraud claims in similar case for failing to allege actual damages). Moreover, Plaintiff does not plausibly allege that any of his personally identifiable information or private communications were disseminated. As with his diminution in value theory, Plaintiff fails to explain *how* this alleged loss of control caused him actual damages. *See Hubbard*, 2024 WL 3302066, at *9.

***Second***, Plaintiff does not allege sufficient facts to establish that Peet's made a *knowingly* false statement. *See Wishnick v. Frye*, 111 Cal. App. 2d 926, 930 (1952) (explaining the scienter element requires actual knowledge, lack of "an honest belief," or carelessness and recklessness). Plaintiff's only allegations that could be directed to these elements speculate about ways Peet's *could have* known that the preferences window was not functioning correctly, such as through testing and "evaluating its performance metrics." (Compl. ¶ 180.) He does not, however, allege that Peet's actually used such tools or that Peet's was aware of the issue.

**5. Plaintiff fails to state a claim for unjust enrichment.**

"California does not recognize a separate cause of action for unjust enrichment," *Klein v. Facebook, Inc.*, 580 F. Supp. 3d 743, 829 (N.D. Cal. 2022) (citation omitted), but a court may "construe the cause of action as a quasi-contract claim seeking restitution." *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015) (citation omitted). To allege unjust enrichment, Plaintiff must show that Peet's "has been unjustly conferred a benefit through mistake, fraud, coercion, or request." *Doe I v. Google LLC*, 741 F. Supp. 3d 828, 848-49 (N.D. Cal. 2024) (citation omitted) (dismissing unjust enrichment claim for failing to allege unlawful conduct). Plaintiff's unjust enrichment claim fails for three reasons.

***First***, Plaintiff does not allege that any of *his* personal information was disclosed to Peet's—or to any third party. This alone demands dismissal of his unjust enrichment claim. *See In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797, 835 (N.D. Cal. 2020) (dismissing unjust enrichment claim where plaintiffs failed to plead "any description of the 'personal information' that Defendants' allegedly used"). Even if the information Plaintiff claims *could have* been collected was indeed collected by his device's browser (*see* Compl. ¶ 21), such information is "so commonly shared across the internet that it cannot reasonably be considered private," *Khamooshi,* 786 F. Supp. 3d at 1183 (finding plaintiffs failed to allege that "Defendant profited *unjustly* from [their] data"). Plaintiff does not explain how Peet's alleged use of his basic interactions with its website was unjust. *See id.* ("Just as a retailer might profit from the use of home addresses without being *unjustly* enriched, Plaintiffs has [sic] not shown why Defendant's use of their IP addresses was unjust.").

***Second***, Plaintiff fails to allege any economic benefit Peet's retained. Plaintiff speculates that Peet's *may have* or *could have* retained profits and vaguely refers to "economic" and "monetary benefits that Plaintiff and Class members conferred onto [Peet's]." (Compl. ¶¶ 192, 194-95.) But he fails to identify what those purported benefits are. The Peet's website is free and public—Plaintiff did not pay to use it. Courts dismiss unjust enrichment claims where plaintiffs fail to specify the alleged benefit. *See, e.g.*, *In re Google Assistant Priv. Litig.,* 457 F. Supp. 3d at 834-35 (dismissing claim where plaintiffs claimed defendant violated its privacy policies and

recorded audio conversations because they failed to allege how defendant purportedly profited or "that their unspecified 'personal information' ha[d] financial value"); *B.K. v. Eisenhower Med. Ctr.,* 721 F. Supp. 3d 1056, 1070 (C.D. Cal. 2024) (dismissing claim in tracking technology case where plaintiff failed to allege how defendant was unjustly enriched).

***Finally***, Plaintiff's claim fails because it is duplicative. It is based on the same factual predicates as his fraud, deception, and/or misrepresentation claim, and his "allegations focus on economic injuries already suffered." *Hubbard*, 2024 WL 3302066, at *4, *6 (dismissing unjust enrichment claim in similar case where plaintiffs sought damages based on the same facts); (*compare* Compl. ¶ 190 ("[Peet's] was unjustly enriched as a result of its wrongful conduct, including through its misrepresentation that users could decline or reject all categories of cookies . . . except "Strictly Required" cookies."), *with id.* ¶ 178 (alleging Peet's "fraudulently and deceptively informed Plaintiff and Class members that he and they could 'Choose Type of Cookies You Accept Using' by adjusting the available settings in the cookie preferences window to decline or reject all categories of cookies . . . except 'Strictly Required' cookies")). Because the remedy is restitution, Plaintiff "must show that [he] lack[s] an adequate remedy at law." *Hughes v. Apple, Inc.*, No. 22-CV-07668-VC, 2024 WL 4828072, at *6 (N.D. Cal. Nov. 18, 2024) (dismissing unjust enrichment claim for failing to plead no adequate remedy at law). Plaintiff asserts that he "would have no adequate legal remedy" (Compl. ¶ 198), but he does not explain how or why this is the case. *See Hughes*, 2024 WL 4828072, at *6. Indeed, Plaintiff seeks damages to remedy his harm; thus, "[t]he legal remedy of damages should serve as an adequate form of retrospective relief." *Hubbard*, 2024 WL 3302066, at *4.

### D. Plaintiff Cannot Assert California Claims on Behalf of All Nationwide Visitors to the Peet's Website.

Plaintiff purports to assert his claims on behalf of "[a]ll persons who browsed the Website in the United States." (Compl. ¶ 116.) "California recognizes that 'with respect to regulating or affecting conduct within its borders, the place of the wrong has the predominant interest,'" namely, "the state where the last event necessary to make the actor liable occurred." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012) (quoting *Hernandez v. Burger*, 102 Cal. App. 3d 795, 802 (1980)).

According to the Complaint, the last event necessary for liability—*i.e.*, the purported "interception"—occurred at the location of each individual visitor's device and Plaintiff concedes through his allegations that the device needs to be in California for his claims to apply. (*See, e.g.*, Compl. ¶ 162 ("[T]he user's *California-based* device, after downloading the software code from the Third Parties' servers, (i) stored the code onto the user's disk; (ii) converted the code into machine-executable format; and (iii) executed the code, causing the transmission of data (including cookie data) to and from the Third Parties.") (emphasis added).) Plaintiff thus alleges that any purported "interception" occurred wherever an individual visitor was located. But Plaintiff does not limit his claims to California residents.

Because each state has its own interest in "protecting it[s] citizens and in regulating [Peet's website in conjunction with its own standards]," a nationwide class under California law would be improper. *See Mazza*, 666 F.3d at 594; *see also In re Yahoo Mail Litig.*, 308 F.R.D. 577, 602-06 (N.D. Cal. 2015) (explaining material differences between CIPA and other states' wiretapping statutes and other states' overriding interest in applying their own laws). Thus, to the extent Plaintiff's claims survive at all, the Court should strike the nationwide class.

**V. CONCLUSION**

Because Plaintiff lacks standing, fails to satisfy the federal pleading standards, and does not state a claim for which relief may be granted, Peet's Coffee respectfully requests that the Court grant its Motion to Dismiss Plaintiff's Complaint. Alternatively, Peet's requests that the Court dismiss the nationwide class allegations.

Dated: May 4, 2026

SHOOK, HARDY & BACON L.L.P.

By: /s/ *Rachel A. Straus*
Rachel A. Straus
Elisabeth A. Hutchinson
Megan Moran

Attorneys for Defendant
Peet's Coffee, Inc.