GUTRIDE SAFIER LLP
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, CA 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT FOR THE

NORTHERN DISTRICT OF CALIFORNIA

SAL MUNOZ, an individual, on behalf of himself, the general public, and those similarly situated,

Plaintiff,

v.

PEET'S COFFEE, INC.,

Defendant.

CASE NO. 3:26-cv-00499-EMC

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS

Date: July 16, 2026
Time: 1:30 p.m.
Location: Courtroom 5

Judge Edward M Chen

## TABLE OF CONTENTS


I. INTRODUCTION ..... 1
II. FACTUAL BACKGROUND ..... 2
A. Defendant Gave Plaintiff a False Choice to Opt-Out of Website Cookies. ..... 2
B. Defendant Intentionally Designed the Websites and Cookie Banners. ..... 4
C. Defendant and Third Parties Profited From Collecting Plaintiff's Data. ..... 5
III. ARGUMENT ..... 5
A. Plaintiff Has Article III Standing. ..... 5
1. Plaintiff has legally protected privacy interests. ..... 5
2. Plaintiff suffered concrete injuries. ..... 8
B. Plaintiff's Pleadings Satisfy Rule 9(b). ..... 10
C. Plaintiff Properly Pled Invasion of Privacy and Intrusion Upon Seclusion. ..... 11
D. Plaintiff Sufficiently Pled CIPA Claims under Section 631. ..... 14
1. Plaintiff Need Not Allege That Contents Were Read In Transit. ..... 14
2. Plaintiff Alleged that Defendant Aided and Abetted a Wiretap. ..... 17
E. Plaintiff Sufficiently Pled CIPA Claims under Section 638.51. ..... 18
1. Section 638.51 applies to online tracking technologies. ..... 19
2. Plaintiff did not consent to collection and transmission of his data. ..... 20
F. Plaintiff Sufficiently Pled Fraud, Deceit, and Misrepresentation. ..... 22
G. Plaintiff Sufficiently Pled Unjust Enrichment Claims. ..... 24
H. Defendant's Class Certification Argument Is Misleading and Improper. ..... 25
IV. CONCLUSION ..... 25

## TABLE OF AUTHORITIES

**Cases**

*B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056 (C.D. Cal. 2024) .................................. 24
*Blake v. Dierdorff*, 856 F.2d 1365 (9th Cir. 1988) .................................................. 11, 23
*Briskin v. Shopify*, 135 F.4th 739 (9th Cir. 2025) .................................................................. 8
*Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093 (N.D. Cal. Aug. 16, 2021) ........................................................................................................ 12
*Brown v. Google LLC*, 685 F. Supp. 3d 909 (N.D. Cal. 2023) .......................................... 6, 14
*Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, (N.D. Cal. Mar. 10, 2022) ............................................................................................... 11, 24
*Byars v. Tire*, 654 F. Supp. 3d 1020 (C.D. Cal. Feb. 3, 2023) ............................................ 15
*Calhoun v. Google LLC,* 526 F. Supp. 3d 605 (N.D. Cal. 2021) ............................................ 6
*Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220 (C.D. Cal. 2011) .................. 25
*Cody v. Ring LLC*, 718 F. Supp. 3d 993 (N.D. Cal. 2024) ..................................................... 16
*Colaprico v. Sun Microsystems, Inc.*, 758 F. Supp. 1335 (N.D. Cal. 1991) ............................... 2
*D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031 (9th Cir. 2008) .......................... 2
*D'Angelo v. Penny Opco, LLC*, No. 23:cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054 (S.D. Cal. Oct., 24, 2023) ............................................................................................................ 15
*Davis v. Facebook, Inc.* ("*In re Facebook Inc. Internet Tracking Litig.*"), 956 F.3d 589 (9th Cir. 2020) ............................................................................................................................ passim
*De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 U.S. Dist. LEXIS 264583 (N.D. Cal. Dec. 22, 2025) ........................................................................................................... 16
*Doe v. Eating Recovery Ctr. LLC,* 806 F. Supp. 3d 1109 (N.D. Cal 2025) ............................. 15
*Doe v. Fullstory, Inc.*, 712 F. Supp. 3d at 1253 (N.D. Cal. 2024) .......................................... 25
*Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064 (N.D. Cal. 2023) ..................................... 24
*ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023 (9th Cir. 2016) ...................................... 23
*Fantasy, Inc. v. Fogerty*, 984 F.2d 1524 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994) ......................................................................................... 2
*Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503 (N.D. Cal. Aug. 29, 2025) ..................................................................................................... 7, 9, 13
*Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836 (N.D. Cal. July 14, 2025) ............................................................................... 6, 8, 13, 20
*Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2025 WL 925028 (C.D. Cal. Apr. 1, 2026) ............................................................................................................................ 8
*Graf v. Zynga Game Network, Inc. (In re Zynga Privacy Litig.)*, 750 F.3d 1098 (9th Cir. 2014) 14
*Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024 (S.D. Cal. 2023) ......................................... 20
*Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220 (N D. Cal. 2022) ........................ 9
*Hammerling v. Google LLC*, 615 F. Supp. 3d 1069 (N.D. Cal. 2022) ...................................... 12
*Heeger v. Facebook, Inc.,* 509 F. Supp. 3d 1182 (N.D. Cal. 2020) ...................................... 7, 21
*Heerde v. Learfield Commc'ns, LLC*, No. 2:23-cv-04493-FLA (MAAx), 2024 U.S. Dist. LEXIS 137781 (C.D. Cal. 2024) ........................................................................................................ 14

*Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272 (2009) .......... 12
*Hill v Nat'l Collegiate Athletic Ass'nl*, 7 Cal. 4th 37 (1994) .......... 13
*Hubbard v. Google LLC,* 19-CV-07016-SVK, 2024 U.S. Dist. LEXIS (N.D. Cal. July 1, 2024) .......... 22, 23
*In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051 (N.D. Cal. 2015) .......... 14
*In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224 (N.D. Cal. 2012) .......... 11
*In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767 (N.D. Cal. 2019) 9
*In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020) .......... 24
*In re Google Inc.*, 806 F.3d 125 (3d Cir. 2015) .......... 7
*In re Google Location History Litig.*, 514 F. Supp. 3d 1147 (N.D. Cal. 2021) .......... 7
*In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147 (N.D. Cal. 2025) .......... 20
*In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609 (N.D. Cal. 2007) .......... 25
*In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d (N.D. Cal. 2018) .......... 22
*James v. Walt Disney Co.*, 701 F. Supp. 3d 942 (N.D. Cal. 2023) .......... 15, 17
*Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951 (9th Cir. May 31, 2022) .......... 19
*Katz v. United States*, 389 U.S. 347 (1967) .......... 6
*Katz-Lacabe v. Oracle Am., Inc.,*, 668 F. Supp. 3d 928 (N.D. Cal. April 6, 2023) .......... 12
*Khamooshi v. Politico LLC,* 786 F. Supp. 3d 1177 (N.D. Cal. 2025) .......... 7, 21, 24
*Konop v. Hawaiian Airlines, Inc.,* 302 F.3d 868 (9th Cir. 2002) .......... 15
*Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096 (C.D. Cal. 2023) .......... 16
*Maghoney v. Dotdash Meredith, Inc.*, No. 24-cv-2304-AJB-BJW, 2026 WL 497402 (S.D. Cal. Feb. 23, 2026) .......... 9
*Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709 (E.D. Mich. Nov. 19, 2013) .......... 21
*Microsoft Corp. v. Baker*, 582 U.S. 23 (2017) .......... 25
*Mikulsky v. Noom, Inc.,* 682 F. Supp. 3d 855 (S.D. Cal. 2023) .......... 7
*Mirmalek v. Los Angeles Times Commc'ns LLC*, No. 24-CV-01797-CRB, 2024 U.S. Dist. LEXIS 227378 (N.D. Cal. Dec. 12, 2024) .......... 20
*Mitchell v. Sonesta Int'l Hotels Corp.*, 2024 U.S. Dist. LEXIS 186701 (C.D. Cal. Oct. 4, 2024) 17
*Ocasio v. United States*, 578 U.S. 282 (2016) .......... 20
*Popa v. Microsoft Corporation*, 153 F.4th 784 (9th Cir. 2025) .......... 7
*PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 84 Cal. Rptr. 2d 455, 975 P.2d 652 (1999) .......... 22
*R.C. v. Sussex Publishers, LLC*, 2025 U.S. Dist. LEXIS 59491 (N.D. Cal. Mar. 28, 2025) .......... 16
*Ribas v. Clark*, 38 Cal. 3d 355 (1985) .......... 17
*Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787 (C.D. Cal. Apr. 4, 2025) .......... 10
*Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093 (N.D. Cal. 2025) .......... 6
*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074 (N.D. Cal. May 21, 2021) .......... 14

*Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290 (N.D. Cal. Jan. 3, 2024) ........ 23
*Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 42 Cal. Rptr. 2d 414 (Ct. App. 1995) .. 22
*Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698 (9th Cir. 2016) ........ 23
*Shah v. Cap. One Fin. Corp.,* 768 F. Supp. 3d 1033 (N.D. Cal. 2025) ........ 22
*Shah v. Fandom*, 754 F. Supp. 3d 924 (N.D. Cal. 2024) ........ 19, 20, 21
*Smith v. Yeti Coolers, LLC*, 754 F. Supp. 933 (N.D. Cal. 2024) ........ 17, 18
*Sonner v. Premier Nutrition Corp.,* 971 F.3d 834 (9th Cir. 2020) ........ 25
*Spokeo v. Robins*, 578 U.S. 330 (2016) ........ 8
*Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal. App. 3d 412, 174 Cal. Rptr. 608 (Ct. App. 1981) ........ 22
*St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067 (N.D. Cal. Oct. 1, 2024) ........ 14, 16
*Tenet Healthcare Corp*., 789 F. Supp. 3d 814 (E.D. Cal. 2025) ........ 17
*Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012-DMS, 2024 U.S. Dist. LEXIS 84019 (S.D. Cal. May 8, 2024) ........ 6
*Torres v. Nutrisystem, Inc,* 289 F.R.D. 587 (C.D. Cal. 2013) ........ 21
*Torres v. Prudential Fin., Inc*., 2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) ........ 15
*TransUnion, LLC v. Ramirez*, 594 U.S. 413 (2021) ........ 5, 8
*United States v. Anderson*, 46 F.4th 1000 (9th Cir. 2022) ........ 20
*United States v. Forrester,* 512 F.3d 500 (9th Cir., 2008) ........ 21
*United States v. Jones*, 565 U.S. 400 (2012) ........ 12
*Valenzuela v. Keurig Green Mt., Inc*., 674 F. Supp. 3d 751 (N.D Cal. 2023) ........ 17
*Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652 (N. D. Cal. Oct. 16, 2025) ........ 6, 20

**Statutes**

Cal Penal Code § 638.51 ........ 18, 19, 20
Cal. Civ. Code § 1709 ........ 22
Cal. Civ. Code § 3333 ........ 22
Cal. Penal Code § 630 ........ 1
**Cal. Penal Code § 631** ........ 14
Cal. Penal Code § 631(a) ........ 17
Cal. Penal Code § 638.50(b) ........ 19

**Rules**

Cal. R. 8.1115(a) ........ 20
Fed. R. Civ. P. 12(f) ........ 2
R Fed. R. Civ. P. 9(b) ........ 1, 10, 11, 23

## I. INTRODUCTION

After Defendant directly represented to Plaintiff that he could choose to protect his data from third parties while using the Peet's Website, it reneged on its promise by installing tracking cookies anyway, enabling third parties to surreptitiously intercept Plaintiff's data while he used the Website. By presenting Plaintiff with a choice, and then, unilaterally and without disclosure, refusing to honor it, Defendant lulled Plaintiff into a false sense of security while depriving him of the control he believed he had over his own information. Throughout its briefing, Defendant refuses to directly engage with these allegations, repeatedly misconstruing both the facts asserted in this case and applicable precedent, seeking dismissal based on legal theories that all courts, including this Court, have rejected in similar cases.

First, Defendant argues that Plaintiff lacks a legally protected privacy interest in his information, relying on cases that are either not binding or did not involve opt-out cookie banners and broken promises. Tellingly, Defendant neglects to mention that, even if Plaintiff truly had no reasonable privacy expectations, Defendant created those expectations by presenting him with the choice to protect his information. Next, Defendant claims that Plaintiff suffered no concrete injuries because it was not highly offensive to secretly gather and transmit aggregated information about him, after agreeing not to do so, while he browsed Defendant's Website. The offensiveness of Defendant's conduct stems from not only the fact that it collected Plaintiff's information but from the fact that it directly *lied* to Plaintiff about it.

Second, Defendant asks this Court to revisit prior holdings interpreting California's Invasion of Privacy Act, Cal. Penal Code § 630 *et seq.* ("CIPA"), invoking *Erie* with unpublished cases that it would be precluded from citing even in California's own state courts. Third, Defendant relies on Rule 9(b), arguing that Plaintiff has not pled intent, the information transmitted, or damages with sufficient specificity to assert claims for fraud and unjust enrichment. But generally alleging damages and intent suffices at the pleadings stage and the scope and specific mechanisms by which Defendant collected and transmitted Plaintiff's information are concealed both by their technical nature and Defendant's false representations that it was not engaging in this conduct. Given this context, it would be particularly unreasonable

to require Plaintiff to identify precisely what information Defendant disseminated and specific Website configurations on specific dates to preemptively plead against a statute of limitations defense, and he should not be penalized at the pleadings stage for Defendant's pattern of obfuscation.

Finally, Defendant submits its counsel's declaration with numerous attached Exhibits. ECF No. 18-1.[1] The Declaration and Exhibits should be disregarded as they are "immaterial, [and] impertinent" and should be stricken under Federal Rule of Civil Procedure 12(f), because they have "no essential or important relationship to the claim for relief or the defenses being pleaded." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds, Fogerty v. Fantasy, Inc*., 510 U.S. 517 (1994). *See also Colaprico v. Sun Microsystems, Inc*., 758 F. Supp. 1335, 1339 (N.D. Cal. 1991). In particular, Declaration Exhibits C and D concern an arbitration involving a non-party and Defendant which is outside the four corners of the Complaint. ECF No. 18-1 at ¶¶ 2-8. Defendant references these materials in its factual background section, arguing in a footnote that the arbitration is "just one of the many reasons this case should not be certified" and asks the Court to strike the nationwide class. ECF No. 18 at 13–14, 33–34. There is no logic to this *ad homimen* attack, except to distract the Court.[2]

## II. FACTUAL BACKGROUND

### A. Defendant Gave Plaintiff a False Choice to Opt-Out of Website Cookies.

Like many companies, Defendant designed its Website to include resources and programming scripts from third parties that enable them to place cookies—small text files sent by a website server to a user's web browser and stored locally on the user's device—and other

---

[1] The Declaration of Defendant's counsel violates this Court's own Civil Standing Order requiring that "All declarations shall be filed as separate documents. **This includes motions and declarations e-filed with the Court. Supporting declarations must be filed as separate documents**." ¶ 7 (emphasis original).

[2] Because it is all impertinence, misdirection, and innuendo, Plaintiff wastes no space refuting Defendant's attacks on Plaintiff and/or his counsel. *See D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1040 (9th Cir. 2008) (stating court must be cognizant that "[t]he attempted use of past litigation to prevent a litigant from pursuing a valid claim in federal court warrants our most careful scrutiny.").

similar tracking technologies on users' browsers and devices to transmit cookies along with user data. ECF No. 1 ¶ 2. But unlike most companies, Defendant offered users a choice to browse *without* placing these cookies and other tracking technologies on their browsers, allowing them to use the Website without tracking or targeting by third-party data brokers or advertisers. *Id.* ¶¶ 1–2, 26. Defendant's cookie banner stated that the Website "uses various technologies including cookies for personalization, website usage and performance measurement, and targeted advertising." The banner then purported to give users a choice to either "Accept" such cookies or adjust and manage their cookie "Preferences[.]" *Id.* ¶ 26. Users who clicked the "Preferences" button were then directed to Defendant's cookie preferences window where Defendant expressly represented to users that they could "Choose Type of Cookies You Accept" and adjust settings for all cookies except "Strictly Required" ones, thereby indicating their choice to decline or reject other cookies or forms of tracking on the Website. *Id.* ¶¶ 27–28.

The representation that users could exercise their "Preferences" with regard to Website cookies and tracking was false. When users adjusted their preferences, Defendant nevertheless permitted Third Parties to place on users' devices and browsers the very cookies they had disabled. *Id.* ¶¶ 30–31. Once placed, these cookies allow user data to be transmitted to third parties in the manner and for the purposes alleged in the Complaint and as described below, including for purposes Defendant described in its Privacy Policy. *Id.* ¶¶ 35–38. Even after users affirmatively de-selected cookies, Defendant surreptitiously enabled numerous Third Parties—including Google LLC (DoubleClick and Google Analytics), Meta Platforms, Inc. (Facebook), ByteDance Ltd. (TikTok), Snap Inc. (SnapChat), and many more (the "Third Parties")—to place and/or transmit tracking cookies on the Website. *Id.* ¶¶ 3–4, 32–33, 35. The cookies Defendant permits Third Parties to place on users' devices and browsers—despite users' express rejection and despite Defendant's express representation to the contrary—track and collect data in real time regarding users' behaviors and communications, including their browsing history, IP addresses, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data. *Id.* 18–21, 34–35.

Plaintiff alleges that he accessed and browsed the Website on one or more occasions, entering his zip code into a text field on the Website. *Id.* ¶¶ 105, 107. But, even before Plaintiff entered this information or the popup cookie banner appeared on his screen, Defendant programmed the Website to enable Third Parties to place cookies and tracking technologies on Plaintiff's devices and transmit his data without his knowledge. *Id.* ¶¶ 108, 112. After Plaintiff adjusted his cookie preferences, he browsed the Website in reliance on the promises and representations Defendant made in the cookie banner. *Id.* ¶¶ 109–110. Despite Plaintiff's clear declination of cookies, Defendant ignored his privacy choices and actively assisted Third Parties in tracking and collecting Plaintiff's data as he browsed the Website. *Id.* ¶¶ 111, 113.

**B. Defendant Intentionally Designed the Websites and Cookie Banners.**

Defendant voluntarily—i.e. intentionally—installed and integrated "third-party resources" from Third Parties into the Website's programming via software code that caused placement of the cookies. *Id.* ¶¶ 2, 17–18, 24. Thus, when users visit the Website, both first-party cookies and third-party cookies are placed on their devices and/or transmitted to Defendant and Third Parties. *Id.* ¶¶ 18–20. Defendant controls the software code of the Website—meaning it has complete control over whether first-party and third-party cookies are placed on users' devices and/or transmitted to Third Parties. *Id.* During the time period in which Plaintiff accessed the Website, Defendant permitted Third Parties to place, store, and/or transmit third-party tracking cookies on users' devices and browsers. *Id.* ¶ 3, 21, 24.

The Website allows users to browse and purchase Defendant's products and services and, as they did so (e.g., by entering data into forms, clicking on links, and making selections), communicate user data to Defendant. *Id.* ¶¶ 19, 23. The third-party cookies stored on and/or loaded from users' devices when they interact with the Website are transmitted to Third Parties, enabling them to, in real time, surreptitiously track and collect Website users' data. *Id.* ¶¶ 21–22, 24, 34. Third-party cookies include an identifier that allows them to recognize and differentiate individual users across websites (including the Website) and across multiple browsing sessions. *Id.* ¶ 20.

### C. Defendant and Third Parties Profited From Collecting Plaintiff's Data.

The data that Defendant's Website collects and transmits via cookies is both personal to users and valuable to Defendant and Third Parties. *Id*. ¶¶ 5, 22, 52 74, 86–87, 90, 95–96, 102–103. It allows Defendant to optimize its Website, marketing, and other commercial operations to effectively target existing and potential consumers. *Id*. ¶¶ 5, 22, 100. It also allows Third Parties to do the same. *Id*. ¶¶ 52, 74, 86–87, 90, 95–96,102. Plaintiff specifically rejected Defendant's and Third Parties' attempts to access and use this information, but Defendant did it anyway, robbing him of the choices he made about his own data. *Id*. ¶¶ 103–104.

## III. ARGUMENT

### A. Plaintiff Has Article III Standing.

Defendant first argues that Plaintiff lacks Article III standing, but he clearly meets all three required elements. First, Plaintiff alleged a concrete invasion of a legally protected interest in his right to privacy, a right that has been traditionally recognized at common law. *TransUnion, LLC v. Ramirez*, 594 U.S. 413, 424 (2021) ("close historical or common-law analogue"); *Davis v. Facebook, Inc.* ("*In re Facebook Inc. Internet Tracking Litig.*"), 956 F.3d 589, 603 (9th Cir. 2020) (holding that "[v]iolations of the right to privacy have long been actionable at common law," and "encompass the individual's control of information concerning his or her person."). Second, Plaintiff's injuries are fairly traceable to Defendant's installation of tracking cookies on his devices, despite his direct request (and Defendant's direct promise) not to be tracked. Third, these injuries can be redressed by this Court with an award of money damages. Defendant's arguments do not detract from any of these three elements.

#### 1. Plaintiff has legally protected privacy interests.

Contrary to Defendant's assertions, ECF. No. 18 at 16–19, the information Plaintiff alleges Defendant allowed the Website to gather about him was not only a zip code or IP address, but precisely the type of information courts find sufficiently specific and personal to confer a protectable privacy interest. After creating an expectation of privacy on its Websites with its explicit promises that it would *not* allow third parties to track or collect Plaintiff's information, Defendant then surreptitiously enabled Third Parties to intercept, collect, and use Plaintiff's

*individualized* data—including likes, interests, and habits—and connect them over multiple visits, associating Plaintiff with a "unique ID" "that is used to track a specific Website user across different websites over time." ECF No. 1 ¶¶ 18, 21, 49, 52, 73, 79, 95. The Ninth Circuit recognizes standing where defendants "reveal an individual's likes, dislikes, interests, and habits over a significant amount of time, without affording users a meaningful opportunity to control or prevent the unauthorized exploration of their private lives." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 599 (clarifying that a consumer has an expectation of privacy in data that is aggregated and collected against the user's wishes.); *see also, Walsh v. Dollar Tree Stores, Inc.*, No. 25-cv-01601-SVK, 2025 U.S. Dist. LEXIS 204652, at *29 (N.D. Cal. Oct. 16, 2025) ("'browsing history, visit history, website interactions, user input data, demographic information, interests and preferences, shopping behaviors, device information, referring URLs, session information, user identifiers, and/or geolocation data,' can be quite sensitive; loss in the privacy of such data supports Article III standing.") (citing *Gabrielli v. Motorola Mobility LLC*, No. 24-cv-09533-JST, 2025 U.S. Dist. LEXIS 133836, at *6 (N.D. Cal. July 14, 2025)).

Defendant also completely overlooks its ***own representation*** that users could browse the Website without being tracked—i.e., they could manage cookie preferences. That fact is outcome-determinative since "courts have found users have a reasonable expectation of privacy if a company states it will not collect your information in certain spaces or while searching in a protected mode." *Thomas v. Papa Johns Int'l, Inc.*, No. 22-cv-2012-DMS, 2024 U.S. Dist. LEXIS 84019, at *5 (S.D. Cal. May 8, 2024) (citing *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 601–03); *see also Katz v. United States*, 389 U.S. 347, 351 (1967) ("[W]hat [a person] seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected"); *Rodriguez v. Google LLC*, 772 F. Supp. 3d 1093, 1104 (N.D. Cal. 2025) (denying Google's motion for summary judgment because representing that it would *not* save data and then saving it created a disputed issue of material fact on whether there was a reasonable expectation of privacy); *Brown v. Google LLC*, 685 F. Supp. 3d 909, 937–41 (N.D. Cal. 2023) (finding plaintiffs had reasonable expectation of privacy when browsing in private or incognito mode); *Calhoun v. Google LLC,* 526 F. Supp. 3d 605, 630 (N.D. Cal. 2021) (finding plaintiffs

"had a reasonable expectation of privacy in the data allegedly collected" based on defendant's representations that it would not receive user data while they were not synced); *In re Google Location History Litig.*, 514 F. Supp. 3d 1147, 1156 (N.D. Cal. 2021) (finding that it "was reasonable for a user to believe that disabling Location History prevented Google from collecting and storing location data"); *In re Google Inc.*, 806 F.3d 125, 151 (3d Cir. 2015) (holding that users maintained a reasonable expectation of privacy where "Google not only contravened the cookie blockers—it held itself out as respecting the cookie blockers.").

Instead of addressing the relevant authority, Defendant relies on unpublished cases or those that did not involve the types of information Defendant collected and the deceptive manner in which it did so. ECF No. 18 at 19. *Popa v. Microsoft Corporation*, 153 F.4th 784, 788–790 (9th Cir. 2025), for example, held that the plaintiff had not pled an injury-in-fact where he had not established how "session replay technology" caused a harm that was "highly offensive," but session replay software was limited to collecting data about the use of a single website for defendant's *own use* and it did not seek plaintiff's consent for the use of the software. Courts in this district have considered and rejected similar attempts to invoke *Popa*, noting that the tracking technologies at issue "are . . . distinguishable, both in users' interactions with them and their capabilities" and "*Popa* never purported to have expressly 'reject[ed]' the tracking technology at issue." *Gabrielli v. Haleon US Inc.*, No. 25-cv-02555-WHO, 2025 U.S. Dist. LEXIS 169503, at *20 (N.D. Cal. Aug. 29, 2025). Similarly, in *Khamooshi v. Politico LLC* none of the plaintiffs alleged that they "rejected" cookies; they merely contended that they did not consent to the disclosure of their IP addresses. 786 F. Supp. 3d 1177 (N.D. Cal. 2025). In *Heeger v. Facebook, Inc.* the court examined claims that Facebook bundled data *for its own use*, whereas, here, Plaintiff's claims are that Defendant transmitted that data to third-parties without consent; indeed, it was transmitted despite an express rejection. 509 F. Supp. 3d 1182, 1186 (N.D. Cal. 2020). Likewise, the court in *Mikulsky v. Noom, Inc.* contrasted *In re Facebook*, which "involved the tracking and collecting of sensitive personal information, including the individuals' likes, dislikes, and habits" with plaintiff's "allegations that Defendant recorded her 'personal information' without specifying what type of information." 682 F. Supp. 3d 855, 865 (S.D. Cal. 2023).

Defendant concedes that district courts in this Circuit have found standing based on the types of information Defendant collected. ECF. No. 18 at 19 n.3. Nevertheless, it urges the Court to ignore its own binding precedent and adhere to an unpublished case from another district that, wrongly, conflated a defendant's violation of its written cookie banner promises with a "common-law privacy tort." *Id.* at 17 (citing *Garcia v. Blackhawk Network, Inc.*, No. 2:25-cv-07550-JLS-SSC, 2025 WL 925028 (C.D. Cal. Apr. 1, 2026)).[3] But Plaintiff's claims encompass *both Defendant's design of its own Website* so that others could collect information about Plaintiff ***and*** *its false promise that it would not allow this collection*. These claims have a "close historical or common-law analogue" because they involve Defendant's affirmative misrepresentations about privacy. *TransUnion*, 594 U.S. at 424. Reliance on a false promise is an injury courts consistently find "has a 'close relationship' to a harm 'traditionally' recognized as providing a basis for a lawsuit in American courts." *Id.* (quoting *Spokeo v. Robins*, 578 U.S. 330, 341 (2016))*; see also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26. The Ninth Circuit analogized such conduct to a "party who physically entered a [plaintiff]'s home by deceptive means to take personal information from the [plaintiff]'s files for its own commercial gain." *Briskin v. Shopify*, 135 F.4th 739, 756 (9th Cir. 2025) (en banc). Here, Defendant's Website design and failure to honor Plaintiff's opt-out choices is tantamount to giving a thief the keys to enter plaintiff's home after promising to safeguard them and is precisely the type of highly offensive deception that "pre-internet" courts recognized at common law. *Id.*

**2. Plaintiff suffered concrete injuries.**

Defendant's next contention—that Plaintiff's claim of injury by the devaluation of personal information is deficient, because Plaintiff has not established both the existence and impairment of a market for his information—is similarly misplaced. *See* ECF No. 18 at 20. First this contention relies on a case involving a data breach, not the design of a Website that

---

[3] The *Garcia* decision Defendant cites was not a final dismissal; the court granted plaintiff leave to amend their complaint a second time to correct the deficiencies identified in its order. 2025 WL 925028. If the Court finds Plaintiff's Complaint deficient it should also grant leave to amend here.

intentionally integrates codes to allow for third-party tracking and fails to honor users' opt-out preferences. *Greenstein v. Noblr Reciprocal Exch.*, 585 F. Supp. 3d 1220, 1229 (N.D. Cal. 2022). Second, Defendant mischaracterizes Plaintiff's injuries as "purely hypothetical loss of value[,]" but that is not the only or even the primary type of harm that Plaintiff alleged. ECF No. 18 at 20.

Here, Defendant caused tracking beyond its own Website and for the benefit of Third Parties—who build profiles, as in *In re Facebook Inc. Internet Tracking Litig.*—while itself creating an expectation of privacy by allowing Plaintiff to opt-out of sharing his data, but then not honoring its own promise. ECF No. 1 ¶¶ 3, 20–21, 31, 34–35. Plaintiff repeatedly alleges that, by offering him the false "choice" to opt-out, he suffered a loss of "the ability *to decide* whether, and on what terms, [his] data may be monetized." *Id.* ¶ 104 (emphasis added). Allegations that a defendant "deprived [Plaintiff of] control of personal information regarding digital activity and profile are enough to show a concrete injury to his right to privacy and, subsequently, Article III standing." *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *15.

Although Defendant claims "deprivation of the right to control dissemination" is not enough to confer standing, it relies on a single unpublished case from outside this District. ECF No. 18 at 21 (citing *Maghoney v. Dotdash Meredith, Inc.*, No. 24-cv-2304-AJB-BJW, 2026 WL 497402, at *1–2 (S.D. Cal. Feb. 23, 2026)).[4] Other cases upon which Defendant relies, *id.* at 20, recognize that claims that a plaintiff's "information was disseminated to third parties in violation of [his] privacy— is sufficient to confer standing." *In re Facebook, Inc., Consumer Priv. User Profile Litig.*, 402 F. Supp. 3d 767, 784 (N.D. Cal. 2019)). Additionally, the Ninth Circuit recognized control over one's own information as a concrete harm sufficient for standing. *See In*

---

[4] Notably, the *Maghoney* ***plaintiff*** characterized this injury as "informational" and the court reached its holding because the plaintiff there did "not cite any cases which have recognized such an 'informational harm'" and reached its holding by relying on cases that did not involve websites, data privacy, or CIPA claims. 2026 WL 497402, at *6.

*re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599 (a plaintiff can be harmed by loss of control over personal information). Plaintiff also alleges that Defendant was unjustly enriched by invading his privacy and property rights. *See* ECF No. 1 ¶ 104. This, too, is a cognizable basis for standing. *See In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 599–600 (plaintiff can seek disgorgement of profits from a privacy invasion and have a personal stake in the controversy).

**B. Plaintiff's Pleadings Satisfy Rule 9(b).**

Defendant argues that Plaintiff did not meet Rule 9(b) because "[h]e fails to offer specific allegations about the 'what' and 'when' of his interactions with the website" because he "does not make specific allegations about information collected about him because of his interactions with [it]"; "fails to plead what representations regarding cookies were made on [it] on the specific dates Plaintiff visited the website or how the website used any cookies placed on his device on those specific dates"; and relies on undated screenshots. ECF No. 18 at 22. This argument is specious. First, Plaintiff clearly pled that he visited the Website on multiple occasions "during the last four years, including in or around August 2025." ECF No. 1 ¶ 105. Second, to the extent that Defendant argues that Plaintiff must allege *exactly* when and what specific information Defendant misappropriated, that would essentially require any would-be Plaintiff to record his network activity all the time, *expecting* Defendant to disregard his privacy elections. That would be a *de facto* bar to consumers from bringing successful internet privacy cases. Moreover, it would open all plaintiffs *who survive* a motion to dismiss to an attack on their Article III standing, as they would be *expecting* that their privacy rights would be infringed upon. *See Rodriguez v. Autotrader.com, Inc.*, 2025 WL 1085787, at *1 (C.D. Cal. Apr. 4, 2025) (no Article III standing when a "tester" expected to be harmed by privacy violations).

Additionally, Plaintiff did not discover that Defendant failed to honor his cookie preferences until later, because "the only way to determine what network traffic is sent to third parties when visiting a website is to use a specialized tool such as Chrome Developer Tools . . .

for use by "developers" (i.e., software developers), whose specialized training enables them to analyze the data underlying the HTTP traffic to determine what data, if any, is being sent to whom" and Plaintiff lacks "the technical knowledge necessary" to "know how the Websites are programmed, which can change over time[.]" ECF No. 1 ¶¶ 112, 115. Indeed, the bulk of what Defendant alleges is missing is within Defendant's exclusive control (e.g., "information collected about him because of his interactions with" Defendant's Website and "how the website used any cookies placed on his device"), can be uncovered during discovery, or has actually been disclosed to it (either in the Complaint or Plaintiff's CLRA letter and negotiations). ECF No. 18 at 22. When, as here, essential information is within the other parties' knowledge, Rule 9(b) permits a more general pleading standard. *See e.g., Blake v. Dierdorff*, 856 F.2d 1365, 1369 (9th Cir. 1988).

In short, Defendant's Rule 9(b) argument relies on the false premise that Plaintiff's Complaint must contain conclusive evidence prior to discovery. *See e.g., In re Clorox Consumer Litig.*, 894 F.Supp.2d 1224, 1234 (N.D. Cal. 2012) (Rule 9(b) demands "detailed information sufficient . . . to place [defendant] on notice of the basis for [plaintiff's] claims and demonstrate[] that [plaintiff is] not on a 'fishing expedition.'"); *Brown v. Natures Path Foods, Inc.*, No. 21-cv-05132-HSG, 2022 U.S. Dist. LEXIS 42760, at *7 (N.D. Cal. Mar. 10, 2022). Much of the allegedly missing information is not essential at this stage of the litigation and Defendant does not meet its burden of explaining why it needs that information to answer the Complaint. Rule 9(b) should not be expanded to require Plaintiff to present this type of technical evidence that allowed Defendant to conceal the very deception that lies at the heart of Plaintiff's Complaint without the benefit of discovery.

### C. Plaintiff Properly Pled Invasion of Privacy and Intrusion Upon Seclusion.

Defendant additionally argues Plaintiff did not plead invasion of privacy and intrusion upon seclusion claims because its conduct was not highly offensive. *See* ECF No. 18 at 23–24. Defendant acknowledges that these are analyzed together and require that Plaintiff show: (1) an

intentional intrusion into a matter as to which the plaintiff has a reasonable expectation of privacy, and (2) the intrusion must be "highly offensive." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606; *see also Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 285–87 (2009). Plaintiff satisfies both.

First, Plaintiff had a reasonable expectation of privacy based on both the information Defendant gathered and disclosed and the manner in which it was disclosed. The information Defendant gathered about him and transmitted to third-parties was not simply Plaintiff's "zip code and interest in cold brew[.]" ECF No. 18 at 23. At a minimum, it included demographic and browsing history information that third-parties could connect them over multiple visits and associated Plaintiff with a "unique ID." *See supra* § A.1. "Allegations that [defendant] allegedly compiled highly personalized profiles from sensitive browsing histories and habits" suffice "to bring claims for invasion of privacy [and] intrusion upon seclusion . . . because they adequately alleged privacy harms." *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 604. *See also United States v. Jones*, 565 U.S. 400, 418 (2012) (Sotomayor, J., concurring) ("I for one doubt that people would accept without complaint the warrantless disclosure []of a list of every Web site they had visited in the last week, or month, or year."); *Katz-Lacabe v. Oracle Am., Inc.,*, 668 F. Supp. 3d 928, 942 (N.D. Cal. April 6, 2023) ("Plaintiffs' strongest argument lies in its allegation that Oracle's accumulation of a 'vast repository of personal data'—from compiling Plaintiffs' browsing activity, online communications, *and* offline activity—is what contravenes the reasonable expectation of privacy. This is in line with the analysis provided in *Facebook Tracking*."); *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1090 (N.D. Cal. 2022) (finding a reasonable expectation of privacy where Google collected a "large amount of personal information from users' smartphones"); *Brooks v. Thomson Reuters Corp.*, No. 21-cv-01418-EMC, 2021 U.S. Dist. LEXIS 154093, at *28 (N.D. Cal. Aug. 16, 2021) ("The Supreme Court has held that compiling disparate pieces of information about a person into a single dossier, even

if the individual pieces of information are publicly available, constitutes a significant invasion of privacy.") (citation omitted).

Second, Defendant's intrusion was highly offensive because not only did it allow third parties to gather and aggregate Plaintiff's information, but it did so after giving Plaintiff enhanced expectations of privacy by falsely representing it would not. *See e.g., In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 606 ("Determining whether a defendant's actions were 'highly offensive to a reasonable person" requires a holistic consideration of factors such as the likelihood of serious harm to the victim, the degree and setting of the intrusion, the intruder's motives and objectives, and whether countervailing interests or social norms render the intrusion inoffensive.") (citation omitted). This is distinguishable from all the cases Defendant cites, where there were no allegations that defendant disclosed information to third parties after explicitly assuring individual plaintiffs that it would not. ECF No. 18 at 24. Here, both the nature of *what* Defendant collected and disclosed and the deceptive *way* it did so render its conduct highly offensive. This was not simply disclosing Plaintiff's information after a general representation about privacy; it was doing so after directly offering Plaintiff reassurances about his privacy, allowing him to make a choice, and then not honoring his choice. Affirmative deception generally breaches social norms and does not, as Defendant suggests, lose its offensiveness simply because it is done "for marketing purposes" rather than to harass or blackmail. *Id.*

Ultimately, the question of whether an intrusion is "highly offensive" is one that cannot be resolved on the pleadings because it is fact-intensive and entails weighing the "extent and gravity of the invasion." *Hill v Nat'l Collegiate Athletic Ass'nl*, 7 Cal. 4th 37 (1994); *see also Motorola*, 2025 U.S. Dist. LEXIS 133836, at *26 (finding that it was premature to dismiss substantially similar "claims based on a determination of how offensive or serious the privacy intrusion is."); *Haleon*, 2025 U.S. Dist. LEXIS 169503, at *22 (agreeing with *Motorola*); *Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2021 U.S. Dist. LEXIS 98074, at *28 (N.D. Cal.

May 21, 2021) ("[n]or is the offensiveness of Google's putative misconduct any less a matter of 'public policy,' or any more susceptible to 'resol[ution] at the pleading stage,' than that ascribed to Facebook"). Consequently, Defendant's call for dismissal is both meritless and premature.

**D. Plaintiff Sufficiently Pled CIPA Claims under Section 631.**

**1. Plaintiff Need Not Allege That Contents Were Read In Transit.**

Defendant asserts that Plaintiff's Section 631 claims fail because he did not allege that anyone attempted to access the "'contents' of "a substantive message while 'in transit.'" ECF. No. 18 at 25. However, Plaintiff explicitly alleged interception of "contents," including search terms. *See* ECF 1, ¶¶ 21, 23, 31, 34, 37–40 ( "user input data"); ¶¶ 21, 158–159 (search inquiries, "the Website user's affirmative decisions, actions, choices, [and] preferences," including "user input data . . . including search queries, the user's name, age, gender, email address, location, and/or payment information"). Courts consider this type of user input data contents for purposes of Section 631. *Graf v. Zynga Game Network, Inc.*, (*Zynga*), 750 F.3d 1098, 1108–09 (9th Cir. 2014) (explaining that, "[u]nder some circumstances, a user's request to a search engine for specific information could constitute a communication such that divulging a URL containing that search term to a third party could amount to disclosure of the contents of a communication"); *St. Aubin v. Carbon Health Techs., Inc.*, No. 24-cv-00667-JST, 2024 U.S. Dist. LEXIS 179067, at *11 (N.D. Cal. Oct. 1, 2024) (URLs that reveal a user's queries reflect the "contents" of a communication); *Brown v. Google LLC*, 685 F. Supp. 3d at 936 ("full-string detailed URL[s]" containing "users' actions on a website, and their search queries" can constitute content); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1083 (N.D. Cal. 2015) (finding search terms implicate "content"); *Heerde v. Learfield Commc'ns, LLC*,741 F. Supp. 3d 849, 859 (C.D. Cal. 2024) ("Search terms constitute 'contents' of a communication."). Courts also have consistently refused to require plaintiffs to plead the exact communications they had with websites. *See, e.g., Zynga*, 750 F.3d 1098, 1108–09; *James v. Walt Disney Co.*, 701 F. Supp. 3d 942, 953–54 (N.D. Cal.

2023) (quoting *Byars v. Tire*, 654 F. Supp. 3d 1020, 1027 (C.D. Cal. Feb. 3, 2023) ("[t]here is no requirement that [plaintiff] specifically allege the exact contents of her communications . . . [she] merely needs to show that the contents were not record information such as her name and address").

Defendant's next argument that these contents were not captured in transit, because they were captured in real time but stored for later use, is also unavailing because the cases it relies upon are procedurally and factually distinguishable. ECF No. 18 at 25–26. *Konop v. Hawaiian Airlines, Inc.* is entirely inapposite to the facts presented here because the Ninth Circuit held that an airline reading posts made to an online bulletin board at an earlier date did not count as interception while the post was "in transit." 302 F.3d 868, 878 (9th Cir. 2002). Both *Torres v. Prudential Fin., Inc*., 2025 U.S. Dist. LEXIS 73736 (N.D. Cal. Apr. 17, 2025) and *Doe v. Eating Recovery Ctr. LLC,* 806 F. Supp. 3d 1109 (N.D. Cal 2025)[5] were decided at summary judgment, after extensive discovery, not on the pleadings. Here, Plaintiff alleged that the highly technical nature of these transmissions and Defendant's false representations about them render the question of exactly what was read and when an issue uniquely within the control of Defendant, *supra* III.B, and he should not be required to prove this on the pleadings. *See D'Angelo v. Penny Opco, LLC*, No. 23:cv-0981-BAS-DDL, 2023 U.S. Dist. LEXIS 191054, a*8 (S.D. Cal. Oct., 24, 2023) ("a pleading standard to the contrary would require the CIPA plaintiff to engage in a one-sided guessing game because the relevant information about data capture typically resides uniquely in the custody and control of the CIPA defendant and its third-party recorder.").

[5] Even after extensive discovery where "corporate representative[s] testified" as to the specific steps taken in reading and processing data, the Court made its determination "without a great deal of confidence that [the third party's] conduct did not satisfy the 'in transit' requirement as a matter of law." *Eating Recovery Ctr. LLC,* 806 F. Supp. 3d at 1116.

Defendant's only appropriately-postured cases all involved pleadings that lacked specific allegations about transmission interception that *are* present in the instant Complaint. *See Cody v. Ring LLC*, 718 F. Supp. 3d 993, 1001 (N.D. Cal. 2024) (vague allegations that a third party was "plugged into" a website, and that messages were routed through its server, failed to specifically allege interception); *De Ayora v. Inspire Brands, Inc.*, No. 25-cv-03645-AGT, 2025 U.S. Dist. LEXIS 264583, at *20 (N.D. Cal. Dec. 22, 2025) (dismissal because the complaint had no description of "how the software works or how the interception occurs."); *R.C. v. Sussex Publishers, LLC*, 2025 U.S. Dist. LEXIS 59491, at *22 (N.D. Cal. Mar. 28, 2025) (dismissal where plaintiff alleged this information was "sent to Google for processing," without sufficiently specifying when or how that transmission occurred). Notably, *R.C.* is an unpublished outlier, and the court's only support for its stated holding that a plaintiff must allege the third party *read*—as opposed to *intercepted*—the contents of a message in transit is *Licea v. Cinmar, LLC*, 659 F. Supp. 3d 1096, 1110 (C.D. Cal. 2023). However, *Licea* held that the plaintiff "d[id] not specifically allege that [his] messages were *intercepted* while in transit[;]" it did *not* read CIPA to require plaintiff to plead that his messages were *read* in transit as well. *Id.* at 1085–85. Neither *R.C.* nor *Licea* support Defendant's contention that Section 631 requires transmissions to be *read* while in transit; "the key to the interception analysis is whether the plaintiff alleges that the transmission was simultaneous." *St. Aubin*, 2024 U.S. Dist. LEXIS 179067, at *17. Here Plaintiff alleges interception including Third Parties collecting user data "in real time" "as they browsed the Website[,]" along with specific screenshots of the HTTP network traffic to demonstrate how and when the transmission occurred. ECF No. 1 ¶¶ 2, 4, 17-18, 21, 31, 113. This is more than

sufficient at the pleadings stage.[6] *See Valenzuela v. Keurig Green Mt., Inc.*, 674 F. Supp. 3d 751, 759 (N.D Cal. 2023); *Tenet Healthcare Corp*., 789 F. Supp. 3d 814, 838 (E.D. Cal. 2025).

### 2. Plaintiff Alleged that Defendant Aided and Abetted a Wiretap.

Defendant contends that Plaintiff fails to allege it aided and abetted violations of section 631(a) because it does not allege that Defendant "intentionally set up a cookie banner to aid third parties in wiretapping." ECF No. 18 at 27. However, Plaintiff specifically alleges that Defendant intentionally designed its Website to allow third-party cookies and tracking. ECF No. 1 ¶¶ 2–3, 17–21, 24. Moreover, CIPA does not require Plaintiff to prove intent at the pleadings stage. *See e.g., James*, 701 F. Supp. 3d at 953–4 (rejecting argument that defendant "cannot be held liable under . . . CIPA unless it intended to have [a third party] intercept the information at issue" because "it can be reasonably inferred that [defendant] entered into a contractual agreement with [third party] under which [the third party] would collect information. . . . *so that [it] could market to and attract new customers*.").

Defendant relies on one case to support its interpretation of CIPA's intent requirement. ECF No. 18 at 26–27 (citing *Smith v. Yeti Coolers, LLC*, 754 F. Supp. 933 (N.D. Cal. 2024)). First, *Yeti* is factually distinct: there, unlike here, the plaintiff alleged that the website owner was liable under the fourth prong of CIPA for aiding a third-party payment processor that "incorporates customers' financial information into its fraud prevention system, which it then

[6] Some federal courts question whether it is necessary to plead that the interception happened "while" the transmission occurred at all, given the California Supreme Court's keystone case *Ribas v. Clark*, 38 Cal. 3d 355, 359 (1985). *Mitchell v. Sonesta Int'l Hotels Corp*., 2024 U.S. Dist. LEXIS 186701, at *19–20 (C.D. Cal. Oct. 4, 2024) "Section 631(a) relates not just to messages, reports, or communications that are 'in transit,' but also to those that are 'being sent from, or received at any place within this state.") (citing Cal. Pen. Code § 631(a) and *Ribas*, 38 Cal. 3d 355, 359 (1985)). In *Ribas*, "the California Supreme Court already indicated that a complaint survives a pleadings-based challenge and states a prima facie violation of Section 631 because it alleges that eavesdropping occurred either while the communication was 'in transit' or was 'being sent from' or 'received at' a place within California." *Mitchell*, 2024 U.S. Dist. LEXIS 186701 at *25 ("There is no indication in *Ribas* that the word 'while' was a key focus of the California Supreme Court's analysis.").

markets to merchants without customers' consent" to violate the statute. *Id.* at 938. The court concluded that the plaintiff failed to allege that the defendant was "acting with the third party *in order* to have the third party perform acts that violate the statute." *Id.* at 942. In other words, the court found that the defendant did not intend to enable the third party to collect user information (which plaintiff alleged violated the statute); it only intended to enable the third party to process payments made on its Website. Here, Defendant integrated the Third Parties' software that placed and transmitted cookies into its Website *in order* to obtain user data for advertising and analytics functions. ECF No. 1 ¶¶ 17, 24. Defendant cannot claim that it did not intend to enable the Third Parties to access users' information after it installed code on its Website to do exactly that.

Second, Defendant's characterization of the holding in *Yeti* is contrary to the prevailing standard in this Circuit discussed above. The defendant in *Yeti*, as here, argued that "Plaintiff must allege that Defendant acted with "'specific intent to commit the unlawful acts'" but the plaintiff, as here, argued that CIPA did not require specific intent. 754 F. Supp. at *942. The court drew a line down the middle, acknowledging that CIPA "does not necessarily incorporate the common law [intent] requirement for aiding and abetting. . . [but] other language in [CIPA's] fourth clause does require ***some*** level of knowledge and intent." *Id.* (emphasis added). Here, Plaintiff alleges more than "some" level of knowledge; he pled that

> Defendant knew, or should have known, how the Website functioned, including the Third Party's resources it installed on the Website and the third-party cookies in use on the Website, through testing the Website, evaluating its performance metrics by means of its accounts with the Third Parties, or otherwise, and knew, or should have known, that the Website's programming allowed the third-party cookies to be placed on users' browsers and devices and/or transmitted to the Third Parties along with users' Private Communications even after users attempted to reject non-essential cookies, which Defendant promised its users they could do.

ECF No. 1 ¶ 180. Further, Plaintiff alleged it was "Defendant's deliberate and purposeful scheme that facilitated the interceptions." *Id.* ¶ 154. This is enough at the pleadings stage.

### E. Plaintiff Sufficiently Pled CIPA Claims under Section 638.51.

**1. Section 638.51 applies to online tracking technologies.**

Defendant urges the Court to dismiss Plaintiff's pen register claims because "[w]ith CIPA Section 638.51, the Legislature was not concerned with software or websites but 'telephone surveillance.'" ECF No. 18 at 28. Although Defendant claims to rely on "Section 638.51's legislative history and plain text" litigants cannot simultaneously rely on a statute's "plain language" and then ask the Court to look at legislative history. *Id. See e.g., Shah v. Fandom*, 754 F. Supp. 3d 924, 931 (N.D. Cal. 2024) ("[T]he Court's analysis must begin with the statutory text, and if that text is clear, must end there. . . . Nothing in the statutory definition limits pen registers to those that operate the same way as a traditional phone pen register."). Moreover, it is well established that "Section 631(a) applies to Internet communications." *Javier v. Assurance IQ, LLC*, No. 21-16351, 2022 U.S. App. LEXIS 14951, at *3 (9th Cir. May 31, 2022). *See also*, *In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d at 608 ("legislative history and statutory text demonstrate that . . . the California legislature intended to protect these historical privacy rights when they passed . . . CIPA.").

The statute defines a "pen register" as "a device or process that records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted[.]" Cal. Penal Code § 638.50(b). Here, Plaintiff alleges the

> cookies and the corresponding software code installed by Defendant on its Websites are each 'pen registers' because they are 'device[s] or process[es]' that 'capture[d]' the 'routing, addressing, or signaling information'—including, the IP address and user-agent information—from the electronic communications transmitted by Plaintiff's and the Class's computers or devices.

ECF No. 1 ¶ 170. The aspect or "process" of a tracking technology that records or decodes such information is a "pen register" because "California's Legislature's chosen definition" of a pen register is "specific as to the type of data [collected]," but "vague and inclusive as to the form of the collection tool" (i.e., a "device or process"). *Mirmalek v. Los Angeles Times Commc'ns LLC*,

No. 24-CV-01797-CRB, 2024 U.S. Dist. LEXIS 227378, at *7 (N.D. Cal. Dec. 12, 2024) (collecting cases and citing *Greenley v. Kochava, Inc.*, 684 F. Supp. 3d 1024, 1050 (S.D. Cal. 2023).

Numerous courts have repeatedly accepted similar allegations, that Section 638.51 encompasses internet trackers, and rejected arguments such as Defendant's as contrary to the statute. *See e.g.*, *id.*; *In re Meta Pixel Tax Filing Cases*, 793 F. Supp. 3d 1147, 1155 (N.D. Cal. 2025); *Fandom, Inc.*, 754 F. Supp. 3d at 931; *Walsh*, 2025 WL 2939229; *Motorola*, 2025 U.S. Dist. LEXIS 133836, at *130 (rejecting argument that § 638.51 is limited to telephones). Defendant acknowledges this but argues these holdings "do not align with the statute's text or legislative history and do not properly consider the *Erie* principles." ECF No. 18 n.5. Unpublished opinions by California state courts cannot create a split in federal and state courts implicating *Erie* because they cannot be "relied on by a court or a party in any other action" in California's own courts and, therefore, are not California law. Cal. R. 8.1115(a).[7] Because Defendant does not claim Section 638.51 is ambiguous, its lenity argument is also unavailing. ECF No. 18 at 29. The rule of lenity applies "only when a criminal statute contains a 'grievous ambiguity or uncertainty,'" after using all available tools of statutory interpretation. *Ocasio v. United States*, 578 U.S. 282, 295, n.8 (2016); *accord United States v. Anderson*, 46 F.4th 1000, 1001 n.1 (9th Cir. 2022).

**2. Plaintiff did not consent to collection and transmission of his data.**

Incredibly, Defendant asserts that Plaintiff "necessarily consented to the collecting of his IP address and basic device metadata" by simply visiting the Website because users implicitly consent to sharing an IP address to direct website routing used to access the Website. ECF No. 18 at 30. But the gravamen of Plaintiff's Complaint is not that the Website accessed his IP address,

---

[7] This Court's Local Rules previously also forbade citation to unpublished California cases. N.D. Cal. Civil L.R. 3-4(e) ("Any order or opinion that is designated: "NOT FOR CITATION," pursuant to [N.D. Cal.] Civil L.R. 7-14 or pursuant to a similar rule of any other issuing court, may not be cited to this Court").

but that it did so and then transmitted it (*and other information*) to third parties after he *expressly declined consent*. ECF No. 1 ¶¶ 170, 173. Defendant asserts that this is not enough to state a claim under Section 638.51 because the statute only applies to recording of data, not subsequently sharing it. ECF No. 18 at 30 (citing *Malibu Media, LLC v. Pontello*, No. 13-12197, 2013 WL 12180709, at *4 (E.D. Mich. Nov. 19, 2013)). However, courts in this District have expressly rejected Defendant's assertion and cited case because the fact that a plaintiff may expect their IP address to be sent to the Website "does not necessarily mean that Plaintiffs should reasonably expect to have Trackers installed that send their IP addresses to third parties every time Plaintiffs visit" the website. *Fandom, Inc.*, 754 F. Supp. 3d 924 n.3 (distinguishing *Malibu Media* because "users were directly communicating with the party alleged to be operating the pen register and voluntarily sent that party their IP address.").

Because Defendant cannot shake this material fact, it, once again, relies on unpublished or easily distinguished cases. ECF No. 18 at 30. *United States v. Forrester,* 512 F.3d 500, 510 (9th Cir., 2008) and *Torres v. Nutrisystem, Inc,* 289 F.R.D. 587, 594 (C.D. Cal. 2013) did not involve Websites at all. *Heeger* did not involve data transmission to third-parties without consent. 509 F. Supp. 3d at 1186. *Khamooshi* reinforces Plaintiff's privacy expectations because it distinguished transmissions that "also involved information implicating a protectable privacy interest—browsing histories that revealed 'an individual's likes, dislikes, interests, and habits over a significant amount of time.' . . . from IP addresses, noting that browsing data 'reveal[ed] much more information' about the user than IP addresses." 786 F. Supp. 3d at 1182 (citing *Facebook Internet*, 856 F.3d at 598–99) (internal citations omitted)). There can be no consent where Plaintiff's Website use was premised on Defendant's false representation that it would safeguard Plaintiff's browsing history and other data beyond his IP address from transmission to third parties.

### F. Plaintiff Sufficiently Pled Fraud, Deceit, and Misrepresentation.

Defendant next argues that Plaintiff fails to sufficiently allege fraud because Plaintiff has not asserted the requisite damages and intent elements. ECF No. 18 at 30–31. Contrary to Defendant's assertions, Plaintiff meets all Rule 9(b)'s pleading standards, *supra* III.B, and need not allege "actual damages" or that he would otherwise sell his data to sustain his fraud claims at the pleadings stage. *Id.* at 31. The California Court of Appeal has ruled that, for the tort of deceit, "the appropriate measure of damages is defined by Civil Code sections 1709 and 3333." *In re: Yahoo! Inc. Customer Data Sec. Breach Litig.*, 313 F. Supp. 3d at 1135 (N.D. Cal. 2018) (citing *Sprague v. Frank J. Sanders Lincoln Mercury, Inc.*, 120 Cal. App. 3d 412, 174 Cal. Rptr. 608, 610 (1981); *Romo v. Stewart Title of Cal.*, 35 Cal. App. 4th 1609, 42 Cal. Rptr. 2d 414, 422 (1995). California Civil Code § 1709 permits recovery of "any damage which [the plaintiff] thereby suffers." Similarly, California Civil Code § 3333 instructs that "[f]or the breach of an obligation not arising from contract, the measure of damages . . . is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been anticipated or not." This applies to breach of the covenant of good faith and fair dealing too, which sounds in tort under California law. *PPG Indus., Inc. v. Transamerica Ins. Co.*, 20 Cal. 4th 310, 315, 84 Cal. Rptr. 2d 455, 458, 975 P.2d 652, 655 (1999).

The cases Defendant relies on to advance its argument are inapplicable. ECF No. 18 at 31. *Shah v. Cap. One Fin. Corp.* did not involve common law fraud claims and the court found no standing for statutory CDAFA and UCL claims where "Plaintiffs state that they had a property interest in their personal information and that Plaintiffs lost money and property when Defendant disclosed their personal information with third parties." 768 F. Supp. 3d 1033, 1048 (N.D. Cal. 2025). *Hubbard v. Google LLC* is easily distinguishable because, unlike here, it "is not a case involving secret or deceptive data collection" and the plaintiff there "confirm[ed] that the sole loss they allege stems from the diminution in value of their information." 19-CV-07016-SVK,

2024 U.S. Dist. LEXIS, at *23, 27 (N.D. Cal. July 1, 2024). Also, in contrast to the instant case, the court in *Walsh* granted a motion to dismiss due to a lack of actual damages on a breach of contract theory, noting "Plaintiffs' theory may be generally acceptable, [but] there are no allegations as to whether the Named Plaintiffs would either sell their data or pay anything to protect their data" and declined to dismiss breach of implied covenant claims. 2025 U.S. Dist. LEXIS 204652, at *54. Here, Plaintiff identified several theories of recovery beyond diminution in value including "the right to control the dissemination and use of" his data. ECF No. 1 ¶ 183. Courts have not required plaintiffs to show specifically what data was disseminated to prevail at the pleadings stage and Defendant provides no authority for the Court to do so here. *See Rodriguez v. Google LLC*, No. 20-cv-04688-RS, 2024 U.S. Dist. LEXIS 1290, at *35 (N.D. Cal. Jan. 3, 2024) (granting class certification when damages were based on "[u]ser's willingness to pay to prevent [their] data collection and [the] organization's willingness to pay for data collection.").

Defendant also argues that Plaintiff failed to plead the requisite scienter by only alleging that Defendant "could have known that the preferences window was not functioning properly[.]" ECF No. 18 at 31. But "intent, knowledge and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). The "heightened pleading standard" of Rule 9(b) only applies to the circumstances of the fraud, not the defendant's state of mind. *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1031–32 (9th Cir. 2016) (citing *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016)). Rule 9(b) permits pleading knowledge and intent on "information and belief." *See Blake*, 856 F.2d at 1369. Alleging that Defendant programmed its Website to allow third-party cookies and tracking  and so "knew, or should have known, how the Website functioned" is more than adequate. especially where, as here, essential information (such as knowledge about the functioning of its own Website) is within the other parties' knowledge. *See supra* III.B and C (citing ECF No. 1 ¶ 180). Plaintiff's fraud allegations are sufficiently specific

to give Defendant notice of the particular misconduct alleged. *Brown v. Natures Path Foods, Inc.*, 2022 U.S. Dist. LEXIS 42760 at *7.

**G. Plaintiff Sufficiently Pled Unjust Enrichment Claims.**

Defendant recycles prior arguments to assert that Plaintiff's unjust enrichment claims fail because he insufficiently identified what personal information was disclosed and any resulting benefits Defendant retained. ECF No. 18 at 32–33 (citing *Khamooshi*, 786 F. Supp. 3d at 1183); *In re Google Assistant Priv. Litig.*, 457 F. Supp. 3d 797 (N.D. Cal. 2020), *B.K. v. Eisenhower Med. Ctr.*, 721 F. Supp. 3d 1056, 1070 (C.D. Cal. 2024)). These arguments and Defendant's reliance on cases that did not involve defendant explicitly agreeing, and then failing, to honor plaintiff's website tracking preferences, are, once again, meritless. *See supra* at III.A.1, B, D.1, F. Defendant's assertion that Plaintiff's claim is duplicative of his fraud claims is also without merit because this Court has previously recognized that "plaintiffs may plead this claim as an alternative at this juncture." *Doe v. Meta Platforms, Inc.*, 690 F. Supp. 3d 1064, 1086 (N.D. Cal. 2023) (Orrick, J.).

The Ninth Circuit noted that "California law recognizes a right to disgorgement of profits resulting from unjust enrichment, even where an individual has not suffered a corresponding loss." *In re Facebook Inc. Internet Tracking Litig.*, 956 F.3d at 596 (citation omitted). "In other words, California law requires disgorgement of unjustly earned profits regardless of whether a defendant's actions caused a plaintiff to directly expend his or her own financial resources or whether a defendant's actions directly caused the plaintiff's property to become less valuable." *Id.* ("Plaintiffs have adequately pleaded an entitlement to Facebook's profits from users' personal data" where they "allege that their browsing histories carry financial value"). Plaintiff adequately alleged unjust enrichment because he alleged that Defendant benefited and profited from using his data. ECF No. 1 ¶¶ 17, 99–103, 192-195 (describing ways in which Defendant benefited from the use of cookies). "These allegations are all that is necessary at this stage in the proceedings."

*Shah v. Cap. One Fin. Corp.*, 768 F. Supp. 3d at 1051 (refusing to dismiss unjust enrichment claim in a privacy case); *see also, Doe v. Fullstory, Inc.*, 712 F. Supp. 3d at 1253 (N.D. Cal. 2024) (Orrick, J) (denying dismissal of unjust enrichment claim when "plaintiffs do allege that their remedies at law are inadequate," and citing *Sonner v. Premier Nutrition Corp.,* 971 F.3d 834, 844 (9th Cir. 2020)).

### H. Defendant's Class Certification Argument Is Misleading and Improper.

Defendant finally mischaracterizes a Plaintiff-specific factual allegation as grounds to strike the nationwide class. ECF No. 18 at 34 (citing ECF No. 1 ¶ 162)). Where Defendant is headquartered in California and the injuries occurred there through transmissions "to Third Parties . . . routed through servers in California" it is misleading to claim a nationwide class is precluded simply because Plaintiff is a California resident using a device in California. ECF No. 1 ¶¶ 7–8, 10–11, 162. "An order striking class allegations is 'functionally equivalent' to an order denying class certification[.]" *Microsoft Corp. v. Baker*, 582 U.S. 23, 34 n.7 (2017). Here, striking the nationwide class prior to discovery would be improper.[8] *See In re Wal-Mart Stores, Inc.*, 505 F. Supp. 2d 609, 614–15 (N.D. Cal. 2007); *Cholakyan v. Mercedes-Benz USA, LLC*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011) (collecting cases and noting it is "in fact rare" to strike class allegations before a certification motion).

## IV. CONCLUSION

For the aforementioned reasons Defendant's Motion to Dismiss and Strike, ECF No. 18, should be denied and the Court should strike Defendant's Declaration, ECF No. 18-1, and Exhibits C and D (ECF Nos. 18-4 and 18-5).

---

[8] Plaintiff seeks injunctive and equitable relief so Defendant cannot rely on *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 593 (9th Cir. 2012), a holding at the class certification stage which was overruled, as a basis to deny "certifying a class seeking injunctive or equitable relief." *Olean Wholesale Grocery Coop, Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 n.32. ECF No. 18 at 33–34.

Dated: June 4, 2026

**GUTRIDE SAFIER LLP**

*/s/ Seth A. Safier /s/*
Seth A. Safier (State Bar No. 197427)
seth@gutridesafier.com
Marie A. McCrary (State Bar No. 262670)
marie@gutridesafier.com
Todd Kennedy (State Bar No. 250267)
todd@gutridesafier.com
100 Pine Street, Suite 1250
San Francisco, California 94111
Telephone: (415) 639-9090
Facsimile: (415) 449-6469

*Attorneys for Plaintiffs*